*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 7, 2015

519389/519390
519391/519392
519393/519394
519396/519398
519399/519400
519402

_____

In the Matter of LYELL MT.
   READ BUSINESS CENTER LLC,
                    Appellant,

     v

EMPIRE ZONE DESIGNATION BOARD
   et al.,
                    Respondents.

(Proceeding No. 1.)
_____

In the Matter of 2255 KENMORE
   AVENUE LLC,
                    Appellant,

     v                                    OPINION AND ORDER

EMPIRE ZONE DESIGNATION BOARD
   et al.,
                    Respondents.

(Proceeding No. 2.)
_____

In the Matter of GATEWAY
   BUSINESS CENTER LLC,
                    Appellant,

     v

EMPIRE ZONE DESIGNATION BOARD
   et al.,
                    Respondents.

(Proceeding No. 3.)

_____

-2-                    519389/519390
                                       519391/519392
                                       519393/519394
                                       519396/519398
                                       519399/519400
                                       519402

In the Matter of LYELL
    BUSINESS & SHOPPING CENTER
    LLC,
                     Appellant,

        v

EMPIRE ZONE DESIGNATION BOARD
    et al.,
                     Respondents.

(Proceeding No. 4.)
_____

In the Matter of ONE FORMAN
    PARK, LLC,
                     Appellant,

        v

EMPIRE ZONE DESIGNATION BOARD
    et al.,
                     Respondents.

(Proceeding No. 5.)
_____

In the Matter of MELVIN &
    MELVIN, PLLC,
                     Appellant,

        v

EMPIRE ZONE DESIGNATION BOARD
    et al.,
                     Respondents.

(Proceeding No. 6.)
_____

-3-                                    519389/519390
                                           519391/519392
                                           519393/519394
                                           519396/519398
                                           519399/519400
                                           519402

In the Matter of HAZEN
    ENTERPRISES, INC.,
                     Appellant,

        v

EMPIRE ZONE DESIGNATION BOARD
    et al.,
                     Respondents.

(Proceeding No. 7.)
_____

In the Matter of TREZZA
    REALTY, LLC,
                     Appellant,

        v

EMPIRE ZONE DESIGNATION BOARD
    et al.,
                     Respondents.

(Proceeding No. 8.)
_____

In the Matter of ALEXANDER &
    CATALANO, LLC,
                     Appellant,

        v

EMPIRE ZONE DESIGNATION BOARD
    et al.,
                     Respondents.

(Proceeding No. 9.)
_____

-4-                              519389/519390
                                 519391/519392
                                 519393/519394
                                 519396/519398
                                 519399/519400
                                 519402

In the Matter of PICCOLO
   PROPERTIES, LLC,
                     Appellant,

       v

EMPIRE ZONE DESIGNATION BOARD
   et al.,
                     Respondents.

(Proceeding No. 10.)
_____

In the Matter of SACK &
   ASSOCIATES CONSULTING
   ENGINEERS, PLLC,
                     Appellant,

       v

EMPIRE ZONE DESIGNATION BOARD
   et al.,
                     Respondents.

(Proceeding No. 11.)
_____


Calendar Date:  March 27, 2015

Before:  Garry, J.P., Egan Jr., Lynch and Clark, JJ.

                        _____


       Hiscock & Barclay, LLP, Syracuse (David G. Burch Jr. of
counsel), for appellants.

-5-                        519389/519390
                              519391/519392
                              519393/519394
                              519396/519398
                              519399/519400
                              519402

Eric T. Schneiderman, Attorney General, Albany (Owen Demuth of counsel), for respondents.

_____

Lynch, J.

Appeals from 11 judgments of the Supreme Court (Melkonian, J.), entered September 25, 2013 in Albany County, which, among other things, dismissed petitioners' applications, in 11 combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, to review 11 determinations of respondent Empire Zone Designation Board revoking petitioners' certifications as empire zone business enterprises.

New York's Empire Zones Program began in 1986 with the enactment of the Economic Development Zones Act that was intended to "stimulate private investment, private business development, and job creation in certain geographic areas characterized by persistent poverty, high unemployment, shrinking tax bases, and dependence on public assistance" (James Sq. Assoc. LP v Mullen, 21 NY3d 233, 240 [2013]; see General Municipal Law § 956). In 2000, to further a desire to focus on business development, the statute was amended to "relax[ ] eligibility requirements" (James Sq. Assoc. LP v Mullen, 21 NY3d at 240). Then, in 2009, it was amended again "to rein in abuses in the Empire Zones Program" (id. at 241). Consequently, insofar as is relevant here, respondent Department of Economic Development (hereinafter DED) was directed to conduct a review in 2009 of all certified business enterprises to determine whether decertification was warranted on one of two grounds (see General Municipal Law § 959 [w]). First, DED could decertify a business enterprise if it was a "shirt-changer," that is, if the enterprise was certified prior to August 1, 2002, and it "caused individuals to transfer from existing employment with another business enterprise with similar ownership . . . to similar employment with [the enterprise] or if

-6-                    519389/519390
                       519391/519392
                       519393/519394
                       519396/519398
                       519399/519400
                       519402

the enterprise acquired, purchased, leased, or had transferred to it real property previously owned by an entity with similar ownership, regardless of form of incorporation or ownership" (General Municipal § 959 [a] [v] [5]; see 5 NYCRR 11.9; Matter of WL, LLC v Department of Economic Dev., 97 AD3d 24, 27 n 3 [2012], affd sub nom. James Sq. Assoc. LP v Mullen, 21 NY3d 233 [2013]). Second, DED could decertify a business enterprise if it failed to meet the 1:1 benefit-cost test (see Matter of WL, LLC v Department of Economic Dev., 97 AD3d at 26-27; Matter of Office Bldg. Assoc., LLC v Empire Zone Designation Bd., 95 AD3d 1402, 1403 [2012]). The latter test required decertification where it was determined that the enterprise "has submitted at least three years of business annual reports [and it] has failed to provide economic returns to the [s]tate in the form of total remuneration to its employees (i.e., wages and benefits) and investments in its facility that add to a greater value than the tax benefits the business enterprise used and had refunded to it" (5 NYCRR 11.9 [c] [2]; see General Municipal Law § 959 [a] [v] [6]).

These proceedings involve 11 business enterprises certified pursuant to the Empire Zones Program that DED decertified in June 2009 pursuant to General Muncipal Law § 959 (w). Petitioners Lyell Mt. Read Business Center LLC (hereinafter Lyell Mt. Read), Gateway Business Center LLC (hereinafter Gateway) and Lyell Business & Shopping Center LLC (hereinafter Lyell BSC) are entities located in the City of Rochester, Monroe County that were created to oversee and manage certain business interests and real property owned by two individuals. Petitioner One Forman Park, LLC (hereinafter OFP) was created in 1997 to develop office space for an entity that eventually merged to become petitioner Sack & Associates Consulting Engineers, PLLC (hereinafter Sack). Both OFP and Sack are located in the City of Syracuse, Onondaga County and were certified as empire zone enterprises in July 2002. Petitioner Hazen Enterprises, Inc. (hereinafter Hazen) was formed to manage certain business interests and real estate owned by two individuals in the Town of Potsdam, St. Lawrence County, and petitioner Trezza Realty, LLC (hereinafter Trezza) was

-7-                          519389/519390
                             519391/519392
                             519393/519394
                             519396/519398
                             519399/519400
                             519402

created to own the real property housing those individuals' various business interests.  Trezza was certified as an empire zone enterprise in July 2002 and Hazen was certified in April 2004.  Petitioner 2255 Kenmore Avenue LLC (hereinafter Kenmore), located in the City of Tonawanda, Erie County, was certified as an empire zone enterprise in June 2001.  Petitioners Alexander & Catalano, LLC (hereinafter Alexander) and Melvin & Melvin, PLLC (hereinafter Melvin), both located in Syracuse, were certified in July 2002.  Lastly, petitioner Piccolo Properties, LLC (hereinafter Piccolo), located in the City of Auburn, Cayuga County, was certified in June 2001.

Each of the petitioners filed timely appeals from DED's revocation determinations with respondent Empire Zone Designation Board (hereinafter Board).  In response, the Board did not reverse the DED findings but, instead, determined that all petitioners were shirt-changers, and further found that Lyell Mt. Read, Gateway, OFP and Trezza also failed to demonstrate compliance with the 1:1 benefit-cost test.  Following the Board's determinations, petitioners commenced separate hybrid CPLR article 78 and declaratory judgment actions seeking, among other things, annulment of petitioners' decertifications.  Supreme Court dismissed the petitions/complaints and this consolidated appeal ensued.

In order to determine whether a business enterprise should be decertified pursuant to the 1:1 benefit-cost test, DED was required to consider the value of wages and benefits and capital investments set forth in each petitioner's business annual report (hereinafter BAR) submitted each year from 2001 to 2007 (see 5 NYCRR 11.9 [c] [2]).  It is not disputed that Lyell Mt. Read, Gateway, OFP and Trezza (proceeding Nos. 1, 3, 5 and 8) each earned tax benefits in excess of their wages, benefits and capital investments.  Lyell Mt. Read contends that, when calculating the ratio, the Board should have considered the extraordinary circumstance that it made investments through its tenants by negotiating below market lease terms in an effort to

-8-                      519389/519390
                        519391/519392
                        519393/519394
                        519396/519398
                        519399/519400
                        519402

keep its property occupied.  Similarly, Gateway contends that the Board should have considered the investments made by its tenants, in particular, the United States Postal Service, which, at the time of the administrative appeal, planned to employ more than 400 people.  Trezza argues that its wages and investments should have been combined with those made by Hazen and, similarly, OFP argues that the Board should have combined its wages and investments with those made by Sack when calculating the benefit-cost ratio.

In these hybrid proceedings, "this Court is limited to determining whether [the Board's] determinations[s] . . . [were] arbitrary and capricious and without a rational basis" (Matter of WL, LLC v Department of Economic Dev., 97 AD3d at 29).  Further, where, as here, an agency is "'acting pursuant to its authority and within its area of expertise[, its determination] is entitled to judicial deference'" (id., quoting Matter of Riverkeeper, Inc. v Johnson, 52 AD3d 1072, 1074 [2008] lv denied 11 NY3d 716 [2009]).

It is now settled that the Board's determination to only consider the BARs submitted by the business enterprise for the years 2001 to 2007 was rational (see James Sq. Assoc. LP v Mullen, 21 NY3d at 250-251; Matter of WL, LLC v Department of Economic Dev., 97 AD3d at 29-30).  Further, by regulation, DED was only required to review and consider the wages and investments made by the business enterprise as set forth in its BARs and did not have to consider those made by the enterprise's tenants or related entities (see 5 NYCRR 11.9 [c] [2]; Matter of Hague Corp. v Empire Zone Designation Bd., 96 AD3d 1144, 1146 [2012], affd sub nom. James Sq. Assoc. LP v Mullen, 21 NY3d 233 [2013]).  As such, we reject the claims by Lyell Mt. Read and Gateway (proceeding Nos. 1 and 3) that the Board should have considered information contained outside of the BARs when it calculated their 1:1 benefit-cost ratios.

-9-                        519389/519390
                          519391/519392
                          519393/519394
                          519396/519398
                          519399/519400
                          519402

As to OFP and Trezza (proceeding Nos. 5 and 8), each concedes that, based on the BARs that each submitted, the Board correctly determined that each failed to meet the 1:1 benefit-cost ratio. OFP contends that respondents should have determined that an extraordinary circumstance exists because, when considered with its related entity, Sack, the combined benefit-cost ratio would be over 20:1. Trezza contends that, when considered with its related entity, Hazen, the combined benefit-cost ratio would exceed 11:1. In support of their arguments, they rely on the Board's determination, set forth in its Resolution No. 8 of 2010, that certain enterprises decertified as shirt-changers demonstrated extraordinary circumstances because they were "(1) a manufacturer, or an entity related to a manufacturer, that has manufacturing operations at the location(s) in the [e]mpire [z]one for which their certification was revoked, [and] (2) that during [2001 to 2007] such businesses and related entity or entities achieved, at such location(s)" at least a 10:1 benefit-cost ratio. Where, as here, an enterprise is decertified pursuant to the 1:1 benefit-cost test, the Board may reverse the determination only where the enterprise submits documentation demonstrating that DED's determination was in error (see General Municipal Law § 959 [w]; 5 NYCRR 14.2 [b]). The Board considers extraordinary circumstances only with respect to an appeal of a finding that an enterprise is a shirt-changer (see General Municipal Law § 959 [w]; 5 NYCRR 14.2 [b]). Accordingly, the Board was not obligated to consider claims of extraordinary circumstances with regard to DED's finding that OFP, Trezza, Lyell Mt. Read and Gateway failed the 1:1 benefit-cost test and, inasmuch as none of these business enterprises submitted documentation to demonstrate any error, we find that the Board's determination to revoke their certificates based on the 1:1 benefit-cost test had a rational basis.[1]

---

[1] Having found that the Board's determination to revoke the certifications of Lyell Mt. Read, Gateway, OFP and Trezza had a rational basis, we decline to consider their arguments with regard to the Board's determination that each enterprise was a

-10-                         519389/519390
                            519391/519392
                            519393/519394
                            519396/519398
                            519399/519400
                            519402

        Turning to the Board's determinations with regard to the shirt-changer test, Lyell BSC, Melvin and Alexander (proceeding Nos. 4, 6 and 9) they concede that they were shirt-changers as defined by the statute and regulations.  The statute and regulations permit the Board to reverse a DED determination revoking a business enterprise's certification on the shirt-changer test where "any extraordinary circumstances occurred which would justify the continued certification of the business enterprise" (General Municipal Law § 959 [w]; accord 5 NYCRR § 14.2 [b]).  The phrase "extraordinary circumstances" is not defined in the statute or regulations, but the record indicates certain instances where respondents found that a shirt-changer did demonstrate extraordinary circumstances.  For example, in addition to Resolution No. 8 of 2010 — cited by OFP and Trezza — the Board reinstated certifications for shirt-changer business enterprises that met their investment goals as set forth in their original applications and also (1) achieved at least a 20:1 benefit-cost ratio based on their 2001 to 2007 BARs (Resolution No. 5. of 2010), (2) were located in a medically underserved area (Resolution No. 10 of 2010) or (3) made capital investments in their empire zone property of at least $10 million (Resolution No. 7 of 2010).  The Board also determined that extraordinary circumstances warranting reinstatement existed where shirt-changer business enterprises constructed new facilities for specific tenants in the empire zone that created at least 100 jobs (Resolution No. 6 of 2010), and also for enterprises that invested at least $5 million toward redevelopment or reuse of their empire zone property during 2001 to 2007 (Resolution No. 9 of 2010).

        In general, if an administrative agency does not follow its own precedent when faced with similar facts, its determination will be deemed to be arbitrary and capricious unless it explains its departure from such precedent (see Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal, 18 NY3d 446,

shirt-changer.

-11-                           519389/519390
                              519391/519392
                              519393/519394
                              519396/519398
                              519399/519400
                              519402

453 [2012]).  Here, with reference to the aforementioned examples, Melvin contends that it demonstrated extraordinary circumstances because it transferred employees and assets from a related entity for a valid business purpose, the merger was not considered to be disqualifying when it was completed in 2002 and it is located in an area that it characterizes as notoriously undesirable.  Similarly, Alexander concedes that it was formed in June 2002 by merger with a limited liability partnership that had been in existence since 1996, but it contends that it was formed for a valid business purpose and that it contributes to the economy in downtown Syracuse.  Lyell BSC contends that its transfer of certain properties in 2003 from a related entity (formed in 1998) was an extraordinary circumstance because the two sole members of Lyell BSC and the transferring entity would have received the same program benefits if the transfer had not occurred.

There is no dispute that, by the plain language of the statute, Alexander, Melvin and Lyell BSC were each entities that could properly be deemed shirt-changers.  None, however, presented arguments that established that they fell squarely within those circumstances that the Board had deemed to be extraordinary, and, generally, this Court may not weigh or consider the arguments presented and substitute its own judgment for that of the Board (see Matter of Nehorayoff v Mills, 95 NY2d 671, 675 [2001]).  While the Board determinations decertifying these entities were not detailed, we are unable to conclude that they were irrational.  As the Empire Zones Program was originally enacted to address "severe conditions" in "areas characterized by persistent and pervasive poverty," and to "promote development of new businesses [and] the expansion of existing businesses" (General Municipal Law § 956), it is therefore typical, not extraordinary, that Alexander and Melvin are located in impoverished areas.  As to the argument by Lyell BSC and Melvin that the entities were formed for a "valid business purpose" pursuant to the Tax Law (see Tax Law § 14 [j] [4] [B]), this language was added to the Tax Law in 2005 to provide that, where

-12-                        519389/519390
                          519391/519392
                          519393/519394
                          519396/519398
                          519399/519400
                          519402

a business enterprise had been certified pursuant to the Empire Zones Program and was similar in operation and ownership to an existing entity or entitites subject to certain taxes, it could be a "new business" and therefore deemed a "qualified empire zone enterprise" for purposes of the Tax Law, so long as the entity was formed for a valid business purpose (Tax Law § 14 [a]; [j] [4] [B]; L 2005, ch 63, part A § 5).[2]  The issue here, however, is distinct and limited to whether the Board properly allowed the enterprises to be decertified pursuant to the definition of shirt-changer after DED conducted its review as set forth in the 2009 legislation (see General Municipal Law § 959 [w]; L 2009, ch 57, part S-1, § 3).  Contrary to the arguments made by Melvin and Lyell BSC, a determination that an entity was formed for a valid business purpose pursuant to Tax Law § 14 is not analogous to a finding that a business enterprise was not a shirt-changer pursuant to General Municipal Law § 959 (a) (v) (5).  Similarly, based on the plain language of the statute, we discern no basis to conclude that it was irrational for the Board to reject Lyell BSC's claim that extraordinary circumstances existed because it accepted the transfer of real property from another entity that was a certified business enterprise.

Hazen (proceeding No. 7) argues that it is not a shirt-changer and that, even if it was, the Board should have

_____

     [2]  The term valid business purpose is defined as "one or more business purposes, other than the avoidance or reduction of taxation, which alone or in combination constitute the primary motivation for some business activity or transaction, which activity or transaction changes in a meaningful way, apart from tax effects, the economic position of the taxpayer.  The economic position of the taxpayer includes an increase in the market share of the taxpayer, or the entry by the taxpayer into new business markets" (Tax Law § 208 [9] [o] [i] [D]).  An entity must be both certified pursuant to General Municipal Law article 18-b and qualified pursuant to the Tax Law to obtain certain exemptions (see Tax Law § 14 [a] [2]).

                             519391/519392
                             519393/519394
                             519396/519398
                             519399/519400
                             519402

determined that it demonstrated extraordinary circumstances warranting its reinstatement. It is not disputed that Hazen was initially formed in 1999, merged with seven related entities in January 2000 and was certified as a empire zone enterprise in April 2000. Hazen argues that the Board should have considered that the transfers were permitted at the time that they were made, prior to the enactment of the expanded program and the enactment of the 2009 legislation. We disagree. As is clear from the statute, DED was directed to review an existing business enterprise that had been certified for the first time prior to August 1, 2002 to determine whether it was a shirt-changer (see General Municipal Law § 959 [a] [v] [5]; [w]). That the standard is applicable to business activities occurring prior to the effective date of the statute "does not render that statute 'retroactive' in any true sense of that term" (Forti v New York State Ethics Commn., 75 NY2d 596, 609 [1990]). Indeed, Hazen and those similarly situated were decertified prospectively, and it is clear that the Legislature intended that such entities would be affected by the policy change (see Matter of Talisman Energy USA, Inc. v New York State Dept. of Envtl. Conservation, 113 AD3d 902, 904 [2014]). Moreover, even if Hazen demonstrated a benefit-cost ratio in excess of 20:1, because the record indicates that Hazen did not meet its original investment goals, we find that it was rational for the Board to distinguish and exclude Hazen from those enterprises recertified pursuant to Resolution No. 5 of 2010.

Piccolo (proceeding No. 10), formed in May 2001, does not dispute that it accepted the transfer of real property from Anthony Piccolo and was certified as an empire zone enterprise in June 2001.[3] The crux of Piccolo's argument is that the Board's determination to revoke its certification pursuant to General Municipal Law § 959 (a) (v) (5) contravenes the statutory language because it accepted transfers from an individual, not an

---

[3] Piccolo did not present any evidence of the alleged "arms-length" transactions to the Board.

-14-                                      519389/519390
                                          519391/519392
                                          519393/519394
                                          519396/519398
                                          519399/519400
                                          519402

"entity."  Generally, this Court will defer to an agency's
interpretation of statutory language when such interpretation
"requires the agency's expertise in the matters covered by the
statute" (Matter of Kent v Cuomo, 124 AD3d 1185, 1186 [2015]).
Although deference is not warranted "when 'the question is one of
pure statutory reading and analysis, dependent only on accurate
apprehension of legislative intent'" (id., quoting Kurcsics v
Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]), it is
"appropriate where the question is one of specific application of
a broad statutory term" (Matter of County of Albany v Hudson
Riv.-Black Riv. Regulating Dist., 97 AD3d 61, 67 [2012], lv
denied 19 NY3d 816 [2012] [internal quotation marks and citation
omitted]).  In our view, because the issue presented requires the
application of the term "entity" to the specific information
provided by Piccolo within the context of the program that
respondents are obligated to administer, its interpretation is
entitled to deference so long as it is rational (see Matter of
Kent v Cuomo, 124 AD3d at 1187).

Insofar as is relevant to Piccolo's argument, a shirt-
changer is a "business enterprise . . . [that] caused individuals
to transfer from existing employment with another business
enterprise" or an "enterprise [that] acquired, purchased, leased,
or had transferred to it real property previously owned by an
entity with similar ownership, regardless of form of
incorporation or organization" (General Municipal Law § 959 [a]
[v] [5]).  Black's Law Dictionary defines the term "entity" as
"[a]n organization . . . that has a legal identity apart from its
members" (Black's Law Dictionary 573 [8th ed 1999]).  Similarly,
the term is ordinarily defined as "being, existence; especially:
independent, separate, or self-contained existence" (Merriam-
Webster Online Dictionary, http://www.merriam-webster.com/
dictionary/entity [accessed Apr. 6, 2015]).  When we consider the
generally broad definition of entity, that the Legislature
further expanded the term by the phrase "regardless of form of
incorporation or organization" (General Municipal Law § 959 [a]
[v] [5]), and that the statute and 2009 amendments were intended

-15-                              519389/519390
                                 519391/519392
                                 519393/519394
                                 519396/519398
                                 519399/519400
                                 519402

only to promote and continue to certify participants that made
actual, not apparent, new investments in the empire zones, we
conclude that the Board's determination to construe "entity" as
including transfers from individuals was a rational
interpretation of the statute (General Municipal Law § 956; see
James Sq. Assoc. LP v Mullen, 21 NY3d at 251).  Further, for the
reasons explained with regard to Alexander and Melvin above, we
find that it was rational for the Board to determine that
Piccolo's activities in an economically distressed area were not
extraordinary circumstances.

     We decline to defer to the Board's determinations with
regard to Kenmore and Sack (proceeding Nos. 2 and 11).  Kenmore
was decertified as a shirt-changer because it hired an employee
from a related enterprise.  Before the administrative appeal,
Kenmore presented evidence that the employee had been employed by
the related enterprise but was terminated in May 2002.  Kenmore
hired the employee in October 2002.  As Kenmore presented
undisputed evidence that the employee did not "transfer from
existing employment" (General Municipal Law § 959 [a] [v] [5]),
we agree with Kenmore that the Board's determination that it was
a shirt-changer based on this event was not rational.  Sack
concedes that it was a shirt-changer, but presented evidence to
the Board that it made investments far in excess of its original
goals and that its benefit-cost ratio was in excess of 20:1.
Accordingly, the Board should have determined that extraordinary
circumstances existed to revoke Sack's decertification (see
Resolution No. 5 of 2010).

     Finally, we find that Supreme Court should have granted all
petitions to the extent that each sought a declaration that the
retroactive application of the decertifications was improper (see
James Sq. Assoc. LP v Mullen, 21 NY3d at 250).  Otherwise, the
court properly dismissed petitioners' declaratory judgment
actions.  Petitioners did not demonstrate that they had a
property right to continued receipt of benefits and each received
the process it was due (see Matter of WL, LLC v Department of

-16-                    519389/519390
                                519391/519392
                                519393/519394
                                519396/519398
                                519399/519400
                                519402

Economic Dev., 97 AD3d at 32; Matter of Hague Corp. v Empire Zone Designation Bd., 96 AD3d at 1147; Matter of Morris Bldrs., LP v Empire Zone Desigation Bd., 95 AD3d 1381, 1383-1384 [2012], affd sub nom. James Sq. Assoc. LP v Mullen, 21 NY3d 233 [2013]).  As to their equal protection claims, no petitioner is a member of a protected class, nor, as set forth herein, do we find that any demonstrated that "they were treated differently from similarly situated entities due to a malicious or bad faith intent to injure on the part of respondents" (Matter of Loudon House LLC v Town of Colonie, 123 AD3d 1406, 1409 [2014] [internal quotation marks and citation omitted]).

We have considered petitioners' remaining arguments and, to the extent that they have not been rendered academic, we find that they are without merit.

Garry, J.P., Egan Jr. and Clark, JJ., concur.

ORDERED that the judgments in proceeding Nos. 1, 3, 4, 5, 6, 7, 8, 9 and 10 are modified, on the law, without costs, by reversing so much thereof as dismissed that part of said petitions/complaints as sought a declaration that the April 2009 amendments to General Municipal Law § 959 may not be applied retroactively to January 1, 2008; said petitions/complaints granted to that extent and it is declared that said amendments shall be applied prospectively; and, as so modified, said judgments affirmed.

-17-
519389/519390
519391/519392
519393/519394
519396/519398
519399/519400
519402

ORDERED that the judgments in proceeding Nos. 2 and 11 are reversed, on the law, without costs, petitions/complaints granted and it is declared that the April 2009 amendments to General Municipal Law § 959 shall be applied prospectively.

ENTER:

Robert D. Mayberger
Clerk of the Court