Matter of Marathon Power LLC v Public Serv. Commn. of the State of N.Y. (2022 NY Slip Op 06053)

Matter of Marathon Power LLC v Public Serv. Commn. of the State of N.Y.

2022 NY Slip Op 06053

Decided on October 27, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 27, 2022

534236
[*1]In the Matter of Marathon Power LLC, Doing Business as Marathon Energy, Appellant,
v
Public Service Commission of the State of New York et al., Respondents.

Calendar Date:September 8, 2022

Before:Lynch, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Phillips Lytle LLP, Buffalo (Kenneth A. Manning of counsel), for appellant.
Robert Rosenthal, Public Service Commission, Albany (Ryan Coyne of counsel), for Public Service Commission, respondent.

Aarons, J.
Appeal from a judgment of the Supreme Court (James H. Ferreira, J.), entered May 7, 2021 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review, among other things, a determination of respondent Public Service Commission finding that petitioner violated the Uniform Business Practices.
Petitioner, a duly-approved energy service company (hereinafter ESCO), provides customers within the service territory of Consolidated Edison Company of New York, Inc. (hereinafter Con Ed), among other companies, with natural gas and electric services. Following an investigation into alleged deceptive business practices, in 2017, respondent Public Service Commission (hereinafter PSC) required petitioner, as relevant here, to comply with the PSC's Uniform Business Practices (hereinafter UBP) in order for petitioner to maintain eligibility as an ESCO. The UBP states, among other things, that an ESCO can supply electricity and/or natural gas to customers pursuant to terms and conditions contained in a sales agreement entered into between an ESCO and a customer. Following another investigation stemming from customer complaints, the PSC found that petitioner's unilateral modification of fixed rates for customers amounted to a breach of a sales agreement and, in turn, that petitioner violated the UBP. In June 2020, the PSC issued an "order imposing consequences" and directed petitioner, among other things, to rerate all customers adversely affected by its modification of fixed rates. Petitioner sought rehearing and reconsideration of this order, which the PSC denied. Petitioner thereafter commenced this CPLR article 78 proceeding seeking, among other things, annulment of the PSC's determination. Supreme Court dismissed the petition, prompting this appeal. We affirm.
The PSC maintains jurisdiction over "the manufacture, conveying, transportation, sale or distribution of gas . . . and electricity for light, heat or power" (Public Service Law § 5 [1] [b]). Indeed, the PSC has the power "to limit, suspend or revoke the eligibility of an [ESCO] to sell or offer for sale any energy services for violation of any provision of law, rule, regulation or policy enforceable by [the PSC]" (General Business Law § 349-d [11]). As part of its oversight over ESCOs, the PSC adopted the UBP — "a set of rules regulating ESCOs' business and marketing practices" (Matter of National Energy Marketers Assn. v New York State Pub. Serv. Commn., 33 NY3d 336, 343 [2019]). To that end, the UBP provides that an ESCO may be subjected to consequences for, among other things, "fail[ing] to adhere to the policies and procedures described in its [s]ales [a]greement" or "fail[ing] to comply with the UBP terms and conditions" (Public Service Commission, Uniform Business Practices, § 2 [D] [5] [b], [f]).
Petitioner does not dispute that the PSC has the authority to regulate ESCOs. Petitioner nonetheless contends that, pursuant to the terms of the [*2]sales agreement that it has with a customer, it was permitted to alter a customer's fixed rates and that the PSC's regulatory power does not extend to resolving what it characterizes as a contractual dispute between it and its customers. We disagree. The record reflects that petitioner changed the rates for its fixed-rate customers based upon a change made by Con Ed. The PSC then investigated petitioner as to whether such rate change violated the UBP. Petitioner justified its decision to change the fixed rates based upon provisions in the sales agreements with the affected customers. Accordingly, and as Supreme Court noted, the determination of whether petitioner complied with the sales agreement and, in turn, complied with the UBP, required the PSC to interpret the provisions at issue in the sales agreement (see Matter of Burke v New York State Pub. Serv. Commn., 47 AD2d 91, 96 [3d Dept 1975], affd 39 NY2d 766 [1976]). As such, the PSC did not act in excess of its jurisdiction. Petitioner's argument that the PSC irrationally concluded that the terms and conditions contained within its sales agreements were "policies and procedures" as used in Public Service Commission, Uniform Business Practices, § 2 (D) (5) (b) is without merit.
Regarding the merits of the PSC's determination, the dispute centers on the interpretation of "rule" as used in the regulatory changes section of the sales agreement. One provision relied upon by petitioner stated that petitioner can modify the sales agreement "[i]f at some future date[,] there is a change in law, rule, regulation, tariff, or regulatory structure that impacts any term, condition or provision of the agreement, including, but not limited to price." Petitioner relies on a similar provision stating that a modification is allowed "[i]f at some future date[,] there is a change in any law, rule, regulation, tariff, or regulatory structure . . . that impacts any term, condition or provision of this [a]greement[,] including but not limited to price."
That said, petitioner contends that Con Ed's amendment of its capacity and energy reconciliation guidelines changing peak hours for the determination of installed capacity tags constituted a change in "rule" within the meaning of the regulatory changes provisions in the sales agreement. Although "rule" was not explicitly defined in the sales agreement, the PSC rejected petitioner's interpretation. The PSC instead concluded that a "rule" meant "a condition imposed by a body that has legislatively delegated authority to impose requirements that has the force and effect of law." In reaching this conclusion, the PSC noted that the term at issue — "rule" — was used in the regulatory changes section and, relying upon State Administrative Procedure Act § 102, found that an agency — and not a regulated entity such as Con Ed — was empowered to adopt or alter rules with the force and effect of law. As Supreme Court also reasoned, the PSC's interpretation of "rule" in the regulatory [*3]changes section was supported due to its use with similar legislative-making terms — i.e., "law," "regulation," "tariff" and "regulatory structure." The PSC also looked to other contexts where "rule" was used in the sales agreement and found that those contexts similarly involved formal agency-enacted rules.
In view of the foregoing, the PSC's interpretation of "rule" in the regulatory changes section in the sales agreement was neither irrational nor arbitrary and capricious (see CPLR 7803 [3]; Matter of Kessel v Public Serv. Commn. of State of N.Y., 193 AD2d 339, 344 [3d Dept 1993]). As such, the PSC's determination that Con Ed's amendment of its guidelines was not a change in rule within the meaning of the regulatory changes section in the sales agreement likewise was neither irrational nor arbitrary and capricious. It follows that petitioner's reliance on Con Ed's amendment to justify the rate change was improper and that the PSC did not err in determining that petitioner violated the UBP by breaching the sales agreement with its customers.
Finally, because the penalty of directing petitioner to rerate the affected customers does not shock the judicial conscience (see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974]), it will not be disturbed. Petitioner's remaining arguments have been considered and are unavailing.
Lynch, J.P., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.