Matter of Saratoga Economic Dev. Corp. v State of N.Y. Auths. Budget Office (2023 NY Slip Op 06292)

Matter of Saratoga Economic Dev. Corp. v State of N.Y. Auths. Budget Office

2023 NY Slip Op 06292

Decided on December 7, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 7, 2023

536021
[*1]In the Matter of Saratoga Economic Development Corporation, Respondent,
v
State of New York Authorities Budget Office, Appellant.

Calendar Date:October 13, 2023

Before:Egan Jr., J.P., Clark, Ceresia, McShan, and Powers, JJ.

Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for appellant.
Greenberg Traurig, LLP, Albany (Cynthia E. Neidl of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the Supreme Court (Richard M. Koweek, J.), entered July 27, 2022 in Albany County, which granted petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul a determination of respondent requiring petitioner to comply with the Public Authorities Accountability Act of 2005.
Petitioner was founded as a not-for-profit local development corporation in 1978, with its stated purposes including improving the quality of life of Saratoga County residents, reducing unemployment and improving job opportunities. Petitioner's certificate of incorporation stated at that time, and continues to state, that petitioner pursues these goals by, among other things, "lessen[ing] the burdens of government" and "act[ing] in the public interest." When initially filed, the certificate of incorporation contained certain references to petitioner being governed by the Public Authorities Law and having interactions with the New York Job Development Authority.
Respondent was established by the Legislature in 2005 as part of the Public Authorities Accountability Act (L 2005, ch 766 [hereinafter the PAAA]). Four years later, the Legislature passed the Public Authorities Reform Act (L 2009, ch 506 [hereinafter the PARA]), finding that "the fundamental problems of transparency, accountability, the responsibilities and functions of board members and oversight [of public authorities] ha[d] not been addressed, leading to a lack of public trust in these institutions" (L 2009, ch 506, § 1). As a result, respondent was vested with a new level of independence and tasked with "provid[ing] oversight of the operations and finances of public authorities in real time and . . . inform[ing] the legislature and executive on issues relating to . . . the governance of authorities" (L 209, ch 506, § 1; see Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off., 33 NY3d 131, 136 [2019]).
In 2008, respondent identified petitioner as a local authority under the Public Authorities Law and advised petitioner that it would henceforth be subject to various reporting and oversight requirements. Petitioner's counsel responded by letter, claiming that petitioner did not meet the definition of a local authority under the law. The parties engaged in no further communications at that time. In 2009, after the passage of the PARA, petitioner amended its certificate of incorporation to delete references to its initial formation as a local development corporation and to omit mention of the Public Authorities Law and the New York Job Development Authority. Nevertheless, following additional correspondence over the ensuing years, respondent ultimately made a final determination in 2020 that petitioner is a local authority as that term is defined by statute (see Public Authorities Law § 2 [2]).
Petitioner then commenced this combined CPLR article 78 proceeding and declaratory judgment action, seeking [*2]to annul respondent's determination and obtain a declaration that it is not a local authority. Supreme Court granted the petition, and respondent appeals.
"Where, as here, an administrative determination is made where an evidentiary hearing is not required by law, this Court's review is limited to whether the determination had a rational basis and was not arbitrary and capricious" (Matter of Smith v City of Norwich, 205 AD3d 140, 142 [3d Dept 2022] [citations omitted]; see CPLR 7803 [3]). "So long as it has a rational basis, we will sustain the determination, even if it would have also been rational for the administrative agency to have reached a different result" (Matter of Froehlich v New York State Dept. of Corr. & Community Supervision, 179 AD3d 1408, 1410 [3d Dept 2020] [citations omitted], appeal dismissed 35 NY3d 1031 [2020]).
Against that backdrop, we begin by analyzing whether respondent's interpretation of the statute in question is entitled to deference. In an instance where an agency is engaged in pure statutory interpretation, a court need not pay deference to the agency's interpretation and may instead undertake that analysis anew (see Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d 201, 209 [2023]; Matter of DeVera v Elia, 32 NY3d 423, 434 [2018]). However, " '[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute' " (Matter of Peyton v New York City Bd. of Stds. & Appeals, 36 NY3d 271, 280 [2020], quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). Deference is also paid when "the question is one of specific application of a broad statutory term" (Matter of Glenwyck Dev., LLC v New York Pub. Serv. Commn., 167 AD3d 1375, 1376 [3d Dept 2018] [internal quotation marks and citations omitted]; see Matter of Lyell Mt. Read Bus. Ctr. LLC v Empire Zone Designation Bd., 129 AD3d 137, 148 [3d Dept 2015]). Further, courts defer to an agency's statutory interpretation "where the general statutory language and legislative history indicate that the Legislature intended to adopt a broad policy approach to the subject matter of the statute, delegating to the administrative agency comprehensive, interpretive and subordinate policy-making authority, interstitially to 'fill in the blanks' consistently with the over-all policy of the statute, either by administrative rule making or case-by-case decisions" (Matter of Judd v Constantine, 153 AD2d 270, 272-273 [3d Dept 1990]; cf. Matter of New York Constr. Materials Assn., Inc. v New York State Dept. of Envtl. Conservation, 83 AD3d 1323, 1325 [3d Dept 2011]).
The issue here concerns the specific application of broad statutory terms — i.e., whether petitioner is "a not-for-profit [*3]corporation affiliated with, sponsored by, or created by a county, city, town or village government," or is "an affiliate of . . . [a] local authority," so as to, itself, be deemed a local authority (Public Authorities Law § 2 [2] [b], [d]) — and such interpretation requires a technical understanding of petitioner's business practices, evaluation of petitioner's financial and other documents and the drawing of inferences therefrom. Additionally, it is clear from the history of the PAAA and the PARA that the Legislature intended to delegate broad interpretive and policy-making authority to respondent, which is tasked with, among numerous other duties, making recommendations to the Governor and Legislature regarding "the performance, reporting, reformation, structure and oversight of state and local authorities," "promulgat[ing] regulations to effectuate the purposes" of the Public Authorities Law, and even "develop[ing] a comprehensive definition of public authorities" (Public Authorities Law § 6 [1] [f], [h], [j]). For these reasons, respondent's interpretation of the statutory language "is entitled to deference so long as it is rational" (Matter of Lyell Mt. Read Bus. Ctr. LLC v Empire Zone Designation Bd., 129 AD3d at 148; see Matter of County of Albany v Hudson Riv.-Black Riv. Regulating Dist., 97 AD3d 61, 68 [3d Dept 2012], lv denied 19 NY3d 816 [2012]).

Turning to the question of rationality, in opposing the petition, respondent submitted the affidavit of Ann Maloney, its acting director since 2021 and, prior to that, its deputy director since 2006.[FN1] According to Maloney, petitioner acts as the economic development agency for Saratoga County, which currently has no such office of its own. Petitioner was founded using seed funding from the County for a sizable portion of its startup costs, and the County has paid millions of dollars to petitioner since then, with its appropriations to petitioner — comprising the entirety of the County's economic development budget — often totaling over $300,000 annually. Maloney explains that, notwithstanding petitioner's claim that it is merely an arms-length contractor being paid to publicize the County (see County Law § 224 [14]), petitioner's services for the County extend far beyond merely providing publicity. To that end, petitioner regularly works with County officials to provide economic development services, including partnering with the public and private sectors to identify projects, shepherd them through the permitting and financing processes and coordinate tax exemptions. In conducting these activities, petitioner participates in monthly meetings where members of the County Board of Supervisors provide oversight and guidance.
Petitioner also has agreements with industrial development agencies in the region, which are themselves subject to the Public Authorities Law, to be the exclusive or primary point of contact for individuals and businesses seeking development opportunities in Saratoga County[*4], and Maloney states that respondent has not seen arrangements with this level of exclusivity among any of the 108 other industrial development agencies in the state. In addition, Maloney points out that petitioner has numerous municipal dues-paying members within Saratoga County. In addition, Maloney points out that petitioner has numerous municipal dues-paying members within Saratoga County. While the record does not indicate the exact amounts contributed to petitioner by these municipalities nor whether their contributions entitle them to any benefits, Maloney observes that, in general, members are entitled to certain benefits based upon the size of their contribution, including an automatic seat on petitioner's board of directors for an annual contribution of $50,000 or more.
Based on the foregoing, we find that respondent rationally concluded that petitioner is a local authority, in that there is a "close relationship between petitioner and local governments" and petitioner "is the type of entity that the Legislature intended to subject to the provisions of the PAAA" (Matter of Griffiss Local Dev. Corp. v State of New York Auth. Budget Off., 85 AD3d 1402, 1405 [3d Dept 2011], lv denied 17 NY3d 714 [2011]). Notably, the purposes of the PAAA and the PARA include remedying public concerns about transparency and accountability of entities that, like petitioner, "work[ ] with public and private sector partners to spur economic development and meet public needs" (Senate Introducer's Mem in Support, Bill Jacket, L 2005, ch 766 at 7). While it is true that petitioner amended its certificate of incorporation, following the passage of the PARA, to remove language that could be construed to mean that petitioner is a local authority, Maloney explains that respondent ascribes this amendment to petitioner's desire to avoid the reporting and accountability requirements of the Public Authorities Law — an aim that is explicitly set forth in the petition.
In finding that respondent's determination is rational and therefore entitled to deference, we reject petitioner's reliance on Matter of Farms First v Saratoga Economic Dev. Corp. (222 AD2d 861 [3d Dept 1995]). In support of the proposition that it is not a local authority, petitioner cites to our findings in that case that it is "an independent entity formed by private businessmen to further their own interests," "has never been furnished offices at County expense," has never had a County employee serve on its board and "receives some of its funding from private individuals and corporations" (id. at 862). However, the analysis undertaken in that case was wholly distinct from the analysis at play here. That is, in Farms First, we were endeavoring to determine whether petitioner should properly be classified as a governmental agency subject to the reporting requirements of the Freedom of Information Law, whereas in this case we are restricted to considering whether respondent's determination that petitioner [*5]is a local authority is rational in view of the particular record that was before respondent. Moreover, it bears noting that Farms First was decided prior to the passage of the PAAA and the PARA, before the term "local authority" was statutorily defined and before respondent was created and vested with oversight responsibilities. We have considered petitioner's remaining contention and find it meritless.
Egan Jr., J.P., Clark, McShan and Powers, JJ., concur.
ORDERED that the judgment is reversed, on the law, without costs, petition dismissed, and it is declared that petitioner is a local authority subject to the Public Authorities Law.

Footnotes

Footnote 1: We reject petitioner's argument that Maloney's affidavit should not be considered because she was not the individual who made the underlying determination. It is well settled that, "[w]here there was no administrative hearing, the agency may submit an employee's or official's affidavit to explain the information that was before the agency and the rationale for its decision, and courts may consider such an affidavit even though it was not submitted during the administrative process" (Matter of Hammonds v New York State Educ. Dept., 206 AD3d 1334, 1334-1335 [3d Dept 2022]; see Matter of Weissenburger v Annucci, 155 AD3d 1150, 1152 [3d Dept 2017]). Maloney, who affirms that she is familiar with the relevant facts — which include respondent's monitoring of petitioner's activities since 2005 — has the requisite firsthand knowledge to supply an affidavit explaining respondent's reasoning and the information it considered in arriving at its conclusion (see Matter of Streety v Annucci, 203 AD3d 1509, 1511 [3d Dept 2022]; Matter of Weissenburger v Annucci, 155 AD3d at 1152).