Matter of Central Hudson Gas & Elec. Corp. v State of N.Y. Pub. Serv. Commission (2025 NY Slip Op 03849)

Matter of Central Hudson Gas & Elec. Corp. v State of N.Y. Pub. Serv. Commission

2025 NY Slip Op 03849

Decided on June 26, 2025

Appellate Division, Third Department

Fisher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 26, 2025

CV-23-2467

[*1]In the Matter of Central Hudson Gas & Electric Corporation et al., Appellants,
v
State of New York Public Service Commission, Respondent.

Calendar Date:April 23, 2025

Before: Clark, J.P., Aarons, Ceresia, Fisher and McShan, JJ.

Whiteman Osterman & Hanna LLP, Albany (Robert S. Rosborough IV of counsel), for appellants.
John J. Sipos, Public Service Commission, Albany (Ryan Coyne of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (Richard McNally Jr., J.), entered December 4, 2023 in Albany County, which, among other things, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondent's motion to dismiss the petition/complaint.
In 2020, Tropical Storm Isaias struck New York and left hundreds of thousands of utility customers without power. A week after the storm hit, over 35,000 residents remained without electricity, resulting in substantial disruption to their lives and the financial loss of spoiled food and medications. Following legislative hearings and an investigation by respondent into the utility companies' alleged failure to adequately prepare for and respond to Isaias, the Legislature adopted new legislation to ensure that New York's utility companies are prepared to respond to "the rise in storm intensity, and effects of climate change" (L 2021, ch 786, part A, § 1 [1]). Signed into law in 2021, the new legislation added, among other things, Public Service Law § 73, which now required utility companies to "credit" and "reimburse" certain storm-related losses to customers impacted by a "widespread prolonged outage lasting at least [72] consecutive hours or more" (Public Service Law § 73 [1]). In doing so, the law prohibited a utility company from recovering "[a]ny costs" from its ratepayers (Public Service Law § 73 [2]), but further balanced these obligations by allowing a utility company to "petition [respondent] for a waiver of the requirements of this section," and outlined specific factors for respondent to consider in deciding whether to grant such a waiver (Public Service Law § 73 [3]). Thereafter, respondent sought public comment on its proposed definitions, process and procedures to be implemented to comply with the intent of the amendment (see Public Service Law § 73 [4]). Petitioners, a group of utility companies that transmit electricity and/or natural gas to customers within New York, submitted comments recommending certain changes and additions to the proposal, including a request for clarification that subdivision (3) would permit a utility company to apply for a waiver of the statutory prohibition under subdivision (2) from recovering the cost of compensating and reimbursing utility customers under subdivision (1). In July 2022, following a public session, respondent issued an Implementation Order declining to adopt petitioners' interpretation, finding subdivision (2) to be "unconditionally prohibitory" and that "nothing in the language of [Public Service Law] § 73 giv[es] the impression that [respondent] has any discretion to socialize the costs" outlined in subdivision (1) to a utility company's customers (Proceeding to Implement Customer Credits and Reimbursements Pursuant to Public Service Law Section 73, NY PSC Case No. 22-M-0159 [July 14, 2022]).
Petitioners then commenced this hybrid CPLR article 78 proceeding and declaratory judgment action, challenging [*2]respondent's interpretation of Public Service Law § 73, which sought 1) an order annulling the Implementation Order as arbitrary and capricious, and 2) a declaration that all utility providers that are subject to Public Service Law § 73 have the right and opportunity to petition respondent for a waiver of the prohibition under Public Service Law § 73 (2), thereby allowing them to recover compensation and reimbursement costs from their ratepayers. Respondent simultaneously joined issue and moved to dismiss the verified petition/complaint on the grounds that the action was not ripe for judicial review, and alternatively moved for summary judgment. Petitioners opposed the application and cross-moved for summary judgment. Supreme Court found, among other things, that petitioners' claim was unripe and granted respondent's motion under CPLR 3211, dismissing the verified petition/complaint in its entirety.[FN1] Petitioners appeal.
Initially, we agree with petitioners that the controversy is ripe for judicial review. Their action is a facial challenge raising a pure question of law concerning statutory interpretation and therefore implicating its text, not its application to a particular set of facts that resulted from an order of respondent that was final (see Matter of Amedure v State of New York, 210 AD3d 1134, 1138 [3d Dept 2022]; Matter of Brooklyn Union Gas Co. v Public Serv. Commn. of State of N.Y., 71 AD2d 171, 174 [3d Dept 1979]; see also Matter of Wir Assoc., LLC v Town of Mamakating, 157 AD3d 1040, 1042 [3d Dept 2018]). Since both parties agree that the matter is fully submitted, and "the record before us permits an assessment of the merits of petitioners' arguments, we choose to address them in the interest of judicial economy rather than remit for Supreme Court to do so" (Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1440 [3d Dept 2020]). To the extent that this now brings before us the portion of petitioners' action seeking a declaratory judgment, we observe that such contention is simply petitioners' replead challenge under CPLR article 78, and is therefore duplicative and unnecessary to address separately within the context of CPLR 3001 (see Matter of Smith v City of Norwich, 205 AD3d 140, 146 [3d Dept 2022]; Matter of Gable Transp., Inc. v State of New York, 29 AD3d 1125, 1128 [3d Dept 2006]).
Turning to the merits, "[w]hen presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the [L]egislature. The starting point for discerning legislative intent is the language of the statute itself. That is, the literal language of a statute controls unless the plain intent and purpose of the statute would otherwise be defeated. We must also consider the statute as a whole, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof" (Matter of Lynch v City of New York, 40 NY3d 7, 13 [2023[*3]] [internal quotation marks, brackets and citations omitted]). Although the text of the statute is "the best indicator of legislative intent" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 352 [2020]), "the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear" (Troy Police Benevolent & Protective Assn. v City of Troy, 299 AD2d 710, 713 [3d Dept 2002] [internal quotation marks and citations omitted], lv denied 100 NY2d 507 [2003]; see Ronkese v Tilcon N.Y., Inc., 153 AD3d 259, 262 [3d Dept 2017]). "In an instance where an agency is engaged in pure statutory interpretation, a court need not pay deference to the agency's interpretation and may instead undertake that analysis anew" (Matter of Saratoga Economic Dev. Corp. v State of N.Y. Auths. Budget Off., 222 AD3d 1072, 1074 [3d Dept 2023] [citations omitted], lv denied 41 NY3d 910 [2024]).
Here, petitioners contend that the prohibition of recovering costs from ratepayers contained in Public Service Law § 73 (2) is one of the "requirements of this section" that utility companies may petition respondent to waive under Public Service Law § 73 (3). We cannot agree. As this is an instance of pure statutory interpretation not requiring the expertise of respondent, namely interpreting the meaning of the word "requirements" in subdivision (3), we do not defer to respondent's interpretation (see Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d 201, 209 [2023]). Subdivision (3) allows a utility company to "petition the commission for a waiver of the requirements of this section" (Public Service Law § 73 [3] [emphasis added]). Because "requirements" is "a word of ordinary import, . . . it should be given its usual and commonly understood meaning" (Matter of Walsh v New York State Comptroller, 34 NY3d 520, 525-526 [2019] [internal quotation marks and citation omitted]). As respondent highlights, a requirement is "[s]omething that must be done because of a law or rule; something legally imposed, called for, or demanded; an imperative command" (Black's Law Dictionary [12th ed 2024], requirement). Subdivision (1) mandates that a "utility company shall . . . provide a credit" to customers affected by prolonged outages (Public Service Law § 73 [1] [a] [emphasis added]). In other words, it defines "something that must be done" by utilities: compensating their customers affected by widespread and prolonged outages. In contrast, subdivision (2) imposes no requirements at all, but a prohibition: "[a]ny costs incurred by a utility company pursuant to this section shall not be recoverable from ratepayers" (Public Service Law § 73 [2] [emphasis added]; see Black's Law Dictionary [12th ed 2024], prohibition). Petitioners err by arguing that the use of the word "shall" in both subdivisions means that both are to be construed as "requirements" under Public Service Law § 73 (3). This interpretation [*4]violates the rule that "words employed in a statute are construed in connection with, and their meaning is ascertained by reference to[,] the words and phrases with which they are associated" (McKinney's Cons Laws of NY, Book 1, Statutes § 239). Petitioners ask us to divorce the word "shall" from the word "not" in subdivision (2) to find it to be the same kind of positive command as in subdivision (1). This defies giving effect and meaning to the entire statute, as subdivision (2) has the inverse effect of subdivision (1) in that it defines something that must not be done. Put succinctly, as subdivision (3) only addresses the requirements of Public Service Law § 73, we find that it is inapplicable to the prohibition in subdivision (2). Nor does petitioners' attempt to reframe subdivision (2) as a requirement comport with the statutory scheme of the Public Service Law. As they correctly point out, utility companies generally enjoy the right to recover their prudently incurred costs from their customers (see Public Service Law §§ 65 [1]; 66 [12] [i]; Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the State of N.Y., 16 NY3d 360, 368-369 [2011]; Matter of Hinchey v Public Serv. Commn. of State of N.Y., 144 AD2d 136, 138 [3d Dept 1988]). Construing subdivision (2) within the context of the entire Public Service Law, as we must (see Matter of Lynch v City of New York, 40 NY3d at 13), it most logically reads as a curtailment of this right by excluding compensation paid to customers left in the dark for more than 72 hours from "prudently incurred costs" rather than as a command to do something.
Indeed, this interpretation is consistent with the legislative intent that imposes a requirement on utility companies to "credit" and provide "reimbursement" to customers under subdivision (1) and permits a utility company to petition for "a waiver of the credits/reimbursement requirements," but makes no mention of a waiver for "[a]ny costs" under subdivision (2) (original Senate Mem in Support, L 2021, ch 786, Feb. 13, 2021 [emphasis added], available at NY State Senate Bill 2021-S4824). This is further in accord with the overarching purpose of the new legislation, which is "to provide meaningful, defined compensation to customers of gas and electric corporations experiencing prolonged service outages" (Senate Mem in Support, Bill Jacket, L 2021, ch 786 at 7; see Governor's Approval Mem, Bill Jacket, L 2021, ch 786 at 5). Allowing utility companies to claw back the compensation given to customers affected by prolonged outages from all ratepayers — including the affected customers — would contradict this intent and dilute any motivating effect the new legislation has toward achieving these objectives. Accordingly, because respondent's interpretation does not conflict with the plain language of the statute and is consistent with the legislative intent, we cannot say that the Implementation Order is arbitrary and capricious (see Matter of Marathon [*5]Power LLC v Public Serv. Commn. of the State of N.Y., 209 AD3d 1245, 1247 [3d Dept 2022], lv denied 39 NY3d 913 [2023]; Matter of R.J. Land, Inc. v Town of Mamakating, 92 AD3d 1004, 1006 [3d Dept 2012]; compare Matter of Thompson Corners, LLC v New York State Dept. of Envtl. Conservation, 119 AD3d 81, 89 [3d Dept 2014], lv denied 24 NY3d 910 [2014]).
Lastly, petitioners contend that, in the event that respondent's interpretation is deemed correct, they are entitled to summary judgment on the grounds that Public Service Law § 73 is unconstitutional because such interpretation violates all utility providers' procedural due process rights under the Takings Clause of the Fifth and Fourteenth Amendments to the US Constitution. Based on the record and to the extent that such claim is properly before us,[FN2] Supreme Court correctly determined that, given the highly technical nature of the ratemaking process and the broad discretion accorded to respondent, petitioners have not demonstrated a constitutionally protected property interest in the recovery of their Public Service Law § 73 (1) credits and reimbursements (see Matter of Niagara Mohawk Power Corp. v New York State Dept. of Transp., 224 AD2d 767, 768 [3d Dept 1996], appeal dismissed 87 NY2d 1054 [1996], lv denied 88 NY2d 809 [1996]; Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y., 135 AD2d 4, 8 [3d Dept 1987], appeal dismissed 72 NY2d 840 [1988]; Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y., 117 AD2d 156, 160 [3d Dept 1986]). We have examined the remaining contentions of the parties and have found them to be without merit or rendered academic.
Clark, J.P., Aarons, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Based on its determination under CPLR 3211, Supreme Court did not reach either party's application for summary judgment.

Footnote 2: As the movants, petitioners had the initial burden on their cross-motion of establishing entitlement to summary judgment, but offered no proof demonstrating that their rate fixed by respondent would "not afford sufficient compensation" so as to constitute a taking "without paying just compensation" as prohibited by the Fifth and Fourteenth Amendments (Duquesne Light Co. v Barasch, 488 US 299, 308 [1989]). Thus, their reliance on Duquesne, which did present detailed proof, is misplaced (id. at 311-312). To this point, a takings claim, such as this one, is generally "not justiciable until the governmental entity charged with implementing the regulations has rendered a final decision regarding the application of the regulations to the property, and [a party] has availed itself of the procedures provided by state law to obtain just compensation" (Matter of Wir Assoc., LLC v Town of Mamakating, 157 AD3d at 1042 [internal quotation marks, ellipsis, brackets and citations omitted]).