In the Matter of DAVID BARRETT et al., Appellants, v DUTCHESS COUNTY LEGISLATURE et al., Respondents. [831 NYS2d 540]—

In a proceeding pursuant to CPLR article 78 to review (1) a resolution of the respondent Dutchess County Legislature dated October 13, 2004, which adopted a negative declaration under the State Environmental Quality Review Act regarding the design and reconstruction of the former Dutchess County Infirmary, and (2) a resolution of the respondent Dutchess County Legislature dated October 14, 2004, authorizing the issuance of serial bonds in the total sum of $7,156,000 to pay the cost of the reconstruction of the former Dutchess County Infirmary, the appeal is from a judgment of the Supreme Court, Dutchess County (Dolan, J.), dated September 14, 2005, which, in effect, denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with costs.

In 2001 the County of Dutchess retained as consultants the firm of Liscum McCormack & Vanvoorhis to conduct a feasibil-

ity study of sites in the eastern part of the County to construct an Eastern Dutchess Government Center (hereinafter the Center). The Center was to provide improved access to government services for residents in that part of the County. Ultimately, the firm recommended that the site of the former Dutchess County Infirmary (hereinafter the Infirmary), located at the intersection of Routes 95 and 97 in the Town of Washington, was the most logical option. The Infirmary was built in or about 1863, and a north wing projecting from the front of the complex was constructed in 1961. The Infirmary, which was closed in 1998, currently houses, in part, the Dutchess County Health Department, the Dutchess County Department of Mental Hygiene, and the Family Partnership Clinic. Thereafter, in 2003, the firm performed a confirmation of the 2001 feasibility study, and reached the same conclusion. The study envisioned renovation of the north and west wings of the Infirmary, and the remaining buildings at the site were to be demolished (hereinafter the Project).

The County, as lead agency, prepared a short environmental assessment form (hereinafter EAF) and related attachment for the Project, which it designated as an "unlisted action" pursuant to the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]). Following public hearings and comment, and review of the EAF, the Dutchess County Legislature (hereinafter the Legislature) adopted resolution No. 204241A, which determined that the Project, with related demolition, was appropriate. In addition, the Legislature issued a negative declaration, determining that the Project would not have a significant adverse effect on the environment, thereby foregoing the need to prepare an environmental impact statement (hereinafter EIS) (see 6 NYCRR 617.7 [a] [2]). The following day, the Legislature adopted resolution No. 204241B, authorizing the issuance of $7,156,000 in serial bonds to pay the cost of the Project.

The petitioners David Barrett, Didi Barrett, David Griffith, Ashlyn Barton, and James Barton (hereinafter collectively the petitioners), who reside in the Town of Washington, commenced this CPLR article 78 proceeding against the Legislature, by and through its Chair, Bradford Kendall, and the County (hereinafter collectively the respondents), to annul the resolutions and the negative declaration, alleging that the respondents failed to take the requisite "hard look" at the environmental impacts of the proposed Project. In an answer, the respondents asserted that the petitioners lacked standing to maintain this proceeding. Thereafter, by an amended petition, the petitioners sought

to add Nancy M. Bailes and Talia Duke as petitioners in this proceeding. By judgment dated September 14, 2003, the Supreme Court, in effect, denied the petition and dismissed the proceeding. The court treated the amended petition as a nullity based upon, inter alia, the petitioners' failure to comply with the requirements of CPLR 401, and found that the petitioners named in the original petition lacked standing to challenge the respondents' determination.

Initially, since the petitioners failed to obtain leave to join Nancy M. Bailes and Talia Duke as petitioners pursuant to CPLR 401, the Supreme Court properly treated the amended petition as a nullity (*see Matter of Board of Educ. of Fla. Union Free School Dist. v DePace*, 301 AD2d 521, 522 [2003]; *Matter of Aries Striping v Hurley*, 202 AD2d 578 [1994]; *see also People v Apple Health & Sports Clubs*, 206 AD2d 266 [1994]; *Vanderbilt Credit Corp. v Chase Manhattan Bank*, 100 AD2d 544, 545 [1984]).

The petitioners argue that since they reside in close proximity to the site of the Project, they had standing to challenge the Legistature's resolutions, based on their claims that the Project would lead to increased traffic, and would adversely affect their scenic views of the former Infirmary, aesthetic and historic resources, and the character of the neighborhood. To establish standing under SEQRA, the petitioners must show (1) that they will suffer an environmental "injury that is in some way different from that of the public at large," and (2) that the alleged injury falls within the zone of interest sought to be protected or promoted by SEQRA (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772-774 [1991]; *see Matter of Nature's Trees v County of Suffolk*, 293 AD2d 543, 544 [2002]). Standing should be liberally construed so that land use disputes are settled on their own merits rather than by preclusive, restrictive standing rules (*Matter of Rosch v Town of Milton Zoning Bd. of Appeals*, 142 AD2d 765, 766 [1988]).

The Supreme Court properly determined that the petitioners David Barrett and Didi Barrett lacked standing to maintain this proceeding. The petition alleged that the Barretts resided at the "principal intersection" providing access to the site of the Infirmary, located less than half a mile away, and that the proposed project would expose nearby residents to increased traffic. The proximity of their residence to the site of the proposed Project is insufficient, without more, to confer standing, and thus, the Barretts are not entitled to an inference of injury (*see Matter of Long Is. Contractors' Assn. v Town of Riverhead*, 17 AD3d 590, 595 [2005]; *Matter of Rediker v Zoning Bd. of Appeals of Town*

*of Philipstown*, 280 AD2d 548, 549-550 [2001]; *Matter of Darlington v City of Ithaca*, 202 AD2d 831, 833 [1994]; *Matter of Casement v Town of Poughkeepsie Planning Bd.*, 162 AD2d 685 [1990]). Therefore, they were required to demonstrate that they would suffer an environmental injury which is "in some way different from that of the public at large" (*Society of Plastics Indus. v County of Suffolk, supra* at 774; *see Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d 428, 433 [1990]). They failed to meet this burden (*see Society of Plastics Indus. v County of Suffolk, supra* at 775; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 414 [1987]; *Matter of Save Our Main St. Bldgs. v Greene County Legislature*, 293 AD2d 907, 909 [2002]; *Matter of Heritage Coalition v Ithaca Landmarks Preserv. Commn.*, 228 AD2d 862, 864-865 [1996]; *Matter of Many v Village of Sharon Springs Bd. of Trustees*, 218 AD2d 845 [1995]).

We reach a different conclusion, however, with respect to the petitioners David Griffith, Ashlyn Barton, and James Barton. The petition alleged that Griffith resided directly across from the "main building complex of the Infirmary," that the Bartons' property directly abutted the site of the proposed Project, and that they would suffer an adverse scenic view. Other proof in the record established that Griffith had a view of "[o]ne of the older structures and portions of others," and that the Bartons had a view of the Infirmary from a distance of 1,200 feet (*see Matter of Parisella v Town of Fishkill*, 209 AD2d 850 [1994]). Since Griffith and the Bartons alleged environmental harm that is different from that suffered by the public at large and that comes within the zone of interest protected by SEQRA, they established the requisite standing to challenge the Legislature's resolutions (*see Society of Plastics Indus. v County of Suffolk, supra; Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y.*, 259 AD2d 26, 32-33 [1999]; *Matter of Steele v Town of Salem Planning Bd.*, 200 AD2d 870, 872 [1994]; *cf. Matter of Gallahan v Planning Bd. of City of Ithaca*, 307 AD2d 684 [2003]).

The petitioners further argue that the respondents failed to comply with the procedural and substantive requirements of SEQRA in determining that the Project would have no significant adverse environmental impact. They assert that the EAF identified potential significant adverse impacts on the environment, and that in failing to prepare an EIS, the respondents performed, at best, a cursory analysis under SEQRA. The record reveals that the respondents' determination to issue a negative declaration, obviating the need for an EIS, was neither

arbitrary and capricious nor irrational (*see* CPLR 7803 [3]; *Matter of Ellsworth v Town of Malta*, 16 AD3d 948 [2005]; *Matter of Plaza v City of New York*, 305 AD2d 604 [2003]).

The primary purpose of SEQRA is " 'to inject environmental considerations directly into governmental decision making' " (*Akpan v Koch*, 75 NY2d 561, 569 [1990], quoting *Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.*, 72 NY2d 674, 679 [1988]). To this end, SEQRA mandates the preparation of an EIS when a proposed project "may have a significant effect on the environment" (ECL 8-0109 [2]). Because the operative word triggering the requirement of an EIS is "may," there is a relatively low threshold for the preparation of an EIS (*see Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359 [1986]; *Matter of Omni Partners v County of Nassau*, 237 AD2d 440, 441 [1997]; *Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown*, 207 AD2d 837, 838 [1994]). An EIS is required if the action may include the potential for even one significant adverse environmental impact (*see* 6 NYCRR 617.7 [a] [1]). A type I action is one that is more likely to require the preparation of an EIS than unlisted actions, such as the instant Project (*see* 6 NYCRR 617.12 [a]; *Matter of Farrington Close Condominium Bd. of Mgrs. v Incorporated Vil. of Southampton*, 205 AD2d 623, 624 [1994]).

Contrary to the petitioners' contention, the respondents identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis for their determination (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]; *see Matter of Avy v Town of Amenia*, 27 AD3d 557, 558-559 [2006]). The record demonstrates that the respondents issued the negative declaration only after they had prepared an EAF, retained a consultant engineering firm, and thoroughly reviewed the relevant areas of environmental concern, including increased traffic, aesthetic and historic resources, and the character of the neighborhood. The studies and documentation supporting the EAF established that any increase in traffic would be minimal, and that the Project incorporated measures to preserve the historic and aesthetic resources of the former Infirmary. Indeed, the respondents determined to retain and renovate the west wing, which was "the most visible portion of the old facility and . . . in the best condition." Other evidence showed that the north wing was located directly in front of the buildings to be demolished, and "almost completely blocks any view of those buildings." Moreover, the respondents did not anticipate any

impact on the existing traffic patterns as the Project would house uses currently at the site, and the decrease in staffing levels would represent a 25% decrease in the intensity of use, as compared to the County's prior use of the Infirmary.

Thus, the record established that the Legislature complied with the mandates of SEQRA and that the issuance of the negative declaration was a proper exercise of discretion (*see Matter of Wertheim v Albertson Water Dist.*, 207 AD2d 896 [1994]). Mastro, J.P., Florio, Fisher and Dillon, JJ., concur.