Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn. (2022 NY Slip Op 01491)





Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn.


2022 NY Slip Op 01491


Decided on March 10, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 10, 2022

532036
[*1]In the Matter of Atlantic Power & Gas LLC, Appellant,
v
New York State Pub. Serv. Commn., Respondent.

Calendar Date:January 14, 2022

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Fisher, JJ.

Phillips Lytle LLP, Albany (Joshua Glasgow of counsel), for appellant.
Robert Rosenthal, Public Service Commission, Albany (John C. Graham of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (DeBow, J.), entered August 31, 2020 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent revoking petitioner's eligibility to operate as an energy service company in New York.
In December 2013, respondent deemed petitioner eligible to serve New York residential and nonresidential natural gas and electric customers as an energy service company (hereinafter ESCO). Between 2015 and 2016, respondent received multiple complaints that petitioner improperly transferred customer accounts from a utility or other ESCO to itself without customer authorization — a prohibited practice known in the industry as "slamming." As a result, in March 2017, respondent prohibited petitioner from marketing and enrolling customers until respondent authorized the resumption of such activities (hereinafter the suspension order). In March 2019, respondent sent petitioner a notice of apparent failure stating that it obtained data demonstrating that petitioner violated the suspension order by enrolling customers during the suspension period. Respondent forwarded correspondence explaining that it had discovered that petitioner prevented customers from switching to another ESCO. Petitioner responded with postdated customer letters authorizing reinstatement. Respondent advised petitioner that the postdated authorizations did not demonstrate contemporaneous customer authorization. Petitioner responded that it lacked contemporaneous documentation but interpreted petitioner's Uniform Business Practices (hereinafter UBP) to allow oral customer authorization and responded with additional documentation.
By order to show cause dated June 2019, respondent alleged that petitioner violated the suspension order and the UBP by continuing the practice of slamming customers — including the reinstatement of customers to itself without the customer's authorization — and sought evidence from petitioner that it did not do so. Respondent further directed petitioner to show cause why it should not revoke petitioner's eligibility to operate as an ESCO. In response to the order to show cause, petitioner again denied that it had enrolled any new customers in violation of the suspension order and claimed that the data obtained by respondent was incorrect and that there was confusion as to how the reinstatement process applied subsequent to the effective date of the suspension order. Petitioner submitted additional documentation as evidence that it had reviewed its internal procedures, undertaken several steps to address respondent's concerns and asserted that it had acted in good faith. Petitioner further claimed that revocation of its eligibility to operate as an ESCO in New York would be an unduly harsh penalty. At the close of this process, respondent determined that petitioner failed to comply with the suspension order and the UBP, and consequently [*2]revoked petitioner's eligibility to serve customers in New York based upon its "pattern of persistent disregard for respondent's consumer protections in the retail market" and "the lack of serious commitment to reform."
Petitioner then commenced this CPLR article 78 proceeding seeking to annul the revocation of its eligibility to serve customers in New York alleging, as relevant here, that respondent had violated petitioner's due process rights and that the punishment was excessive. Supreme Court dismissed the petition, finding that there was no due process violation because, although petitioner demonstrated that its operation of an ESCO constituted a liberty interest but no property interest — thus entitling it to due process — respondent provided petitioner with sufficient notice of the allegations of noncompliance and ample opportunity to respond, so as to afford the requisite due process. Supreme Court also found that the revocation of petitioner's eligibility to act as an ESCO was not excessive punishment. Petitioner appeals.
The gravamen of this proceeding is petitioner's contention that respondent's decision to revoke its eligibility to operate as an ESCO in New York was made without affording it adequate procedural due process. To succeed on a procedural due process argument, petitioner must show, as a threshold matter, "the deprivation of a protected interest by procedures [that] were insufficient under the circumstances" (Matter of Schiavone Constr. Co. v Larocca, 117 AD2d 440, 443 [1986], lvs denied 68 NY2d 610 [1986]; see generally Morrissey v Brewer, 408 US 471, 481 [1972]). "Hence, the due process claim requires a twofold analysis: first, whether [the] petitioner[] ha[s] a protected interest and, if so, whether the procedures afforded [the petitioner] were adequate" (Matter of Schiavone v Constr. Co. Larocca, 117 AD2d at 443; see Morrissey v Brewer, 408 US at 481; Matter of Medicon Diagnostic Labs. v Perales, 145 AD2d 167, 172 [1989], affd 74 NY2d 539 [1989]).
Here, although Supreme Court determined that petitioner did not have a property interest, it found that petitioner possessed a liberty interest.[FN1] We disagree. Although a business may possess a liberty interest, this is limited to instances where a business' ability to conduct its operations suffers from being stigmatized — such as being branded irresponsible or lacking integrity (see Matter of Schiavone Constr. Co. v Larocca, 117 AD2d at 443). Having reviewed the record before us, we find that no stigma attached to petitioner as a result of respondent's challenged action, as petitioner's eligibility to serve New York customers was revoked simply due to its noncompliance with the suspension order and the UBP (see Matter of Loyal Tire & Auto Ctr. v New York State Thruway Auth., 227 AD2d 82, 86 [1997], lv denied 90 NY2d 804 [1997]). Significantly, the revocation order did not label petitioner or contain statements finding petitioner to be irresponsible, lacking integrity [*3]or otherwise implicate its reputation. Therefore, Supreme Court erred in determining that petitioner's liberty interest was implicated, in the absence of any cognizable stigma, by virtue of respondent's revocation of its eligibility to operate as an ESCO in New York (compare Matter of Schiavone Constr. Co. v Larocca, 117 AD2d at 443).
Even if we were to conclude that petitioner possessed a constitutionally protected liberty interest in the circumstances presented here, we would find that the procedures afforded to petitioner satisfied the requirements of due process. "[D]ue process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand" (Matter of Medicon Diagnostic Labs. v Perales, 74 NY2d 539, 546 [1989] [internal quotation marks and citation omitted]). "Due process . . . is determined by a weighing of the interests at stake, the risk of erroneous deprivation, the probable value of additional safeguards and the cost of substitute procedures" (Matter of Schiavone Constr. Co. v Larocca, 117 AD2d at 443 [citation omitted]). Here, petitioner's ability to conduct business and further its company's operations is tempered by respondent's statutory authority to supervise all gas and electric companies operating in New York and overseeing said companies to ensure that they are in compliance with all regulations (see Public Services Law § 66; General Business Law § 349-d [11]; Matter of National Energy Marketers Assn. v New York State Pub. Serv. Commn., 33 NY3d 336, 351 [2019]). The record reflects that petitioner had many mechanisms available to it to challenge respondent's determination and an opportunity to present its explanations and defenses. From the initial notice of apparent failure through the order to show cause, petitioner received detailed notification of respondent's concerns, there was continuous dialogue between the parties, and petitioner had numerous and full opportunities to provide information, documentation and to present its defenses. Additionally, petitioner was able to pursue a proceeding under CPLR article 78 to challenge respondent's ultimate determination to revoke petitioner's eligibility to serve customers in New York (see Franbilt, Inc. v New York State Thruway Auth., 290 AD2d 705, 707 [2002]; Matter of Schiavone Constr. Co. v Larocca, 117 AD2d at 444). In these circumstances, such procedures afforded petitioner adequate and necessary due process (see Matter of Bezar v New York State Dept. of Social Servs., 151 AD2d 44, 50-51 [1989]; Franbilt, Inc. v New York State Thruway Auth., 290 AD2d at 707).
Petitioner also contends that the punishment imposed by respondent was unconscionably disproportionate to the technical UBP violations that it was found to have committed. "An administrative penalty falls within the discretion of the reviewing agency and will not be disturbed unless it is so disproportionate to the offense that it shocks one's sense of fairness" [*4](Matter of Epelboym v Board of Regents of the State of N.Y., 174 AD3d 1182, 1183 [2019] [citations omitted]; see Matter of Lewis v New York State Off. of Children & Family Servs., 114 AD3d 1065, 1067 [2014]). "In assessing the penalty, the reviewing court may neither second-guess the administrative agency nor substitute its own judgment for the action taken" (Matter of Liguori v Beloten, 76 AD3d 1156, 1157-1158 [2010] [citation omitted], lv denied 16 NY3d 702 [2011]; see Matter of Castle v Maine-Endwell Cent. Sch. Dist., 111 AD3d 1221, 1222 [2013], lv denied 22 NY3d 862 [2014]). There is ample evidence to support respondent's finding that petitioner violated the suspension order relating to customer enrollments and unauthorized account transfers. The severity of the punishment was a reasonable escalation given petitioner's continuous violations in the short period of time that it was operating as an ESCO in New York. When taking into consideration all relevant circumstances, we cannot say that the penalty shocked one's sense of fairness (see Matter of Castle v Maine-Endwell Cent. Sch. Dist., 111 AD3d at 1222). To the extent that we have not addressed any of petitioner's remaining contentions, they have been considered and found to be without merit.
Garry, P.J., Clark, Aarons and Fisher, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Contrary to petitioner's contention, because respondent obtained dismissal of the petition as it had requested, it was not aggrieved and had no right to cross-appeal (see CPLR 5511). As an alternative ground for affirming, however, respondent is permitted to rely on any arguments that it raised before Supreme Court, including its contention that petitioner did not possess a constitutionally protected liberty interest in its eligibility to operate as an ESCO in New York (see Matter of Thornton v Saugerties Cent. Sch. Dist., 121 AD3d 1253, 1254 n 1 [2014]; Matter of Seney v Board of Educ. of the E. Greenbush Cent. Sch. Dist., 103 AD3d 1022, 1022 n 1 [2013]).