Matter of Jorling v Adirondack Park Agency (2023 NY Slip Op 01118)

Matter of Jorling v Adirondack Park Agency

2023 NY Slip Op 01118

Decided on March 2, 2023

Appellate Division, Third Department

Ceresia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 2, 2023

533913

[*1]In the Matter of Thomas Jorling, Appellant,
v
Adirondack Park Agency et al., Respondents.

Calendar Date:December 15, 2022

Before: Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Braymer Law, PLLC, Glens Falls (Claudia K. Braymer of counsel), for appellant.
Letitia James, Attorney General, Albany (Joshua M. Tallent of counsel), for Adirondack Park Agency and another, respondents.
Norfolk Beier PLLC, Lake Placid (Matthew D. Norfolk of counsel), for LS Marina, LLC, respondent.
Protect the Adirondacks! Inc., Johnsburg (Christopher Amato of counsel), for Protect the Adirondacks! Inc., amicus curiae.
Pace Environmental Litigation Clinic, White Plains (Todd D. Ommen of counsel), for Adirondack Wild: Friends of the Forest Preserve and another, amici curiae.

Ceresia, J.
(1) Appeal from a judgment of the Supreme Court (Richard B. Meyer, J.), entered August 3, 2021 in Essex County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review, among other things, a determination of respondent Adirondack Park Agency granting a shoreline variance to respondent LS Marina, LLC, (2) motions to strike the addendum to petitioner's reply brief, and (3) cross-motion to strike the addendum to respondents Adirondack Park Agency and Department of Environmental Conservation's brief.
Petitioner owns real property on the western shore of Ampersand Bay, at the northern end of Lower Saranac Lake in the Adirondack Park. Respondent LS Marina, LLC owns and operates the Saranac Lake Marina (hereinafter the marina), with two locations on the lake. One location, known as the Annex, is across Ampersand Bay from petitioner's property on the bay's eastern shore, occupying approximately five acres with 1,300 feet of shoreline. The other location, known as the Main Marina, is in Crescent Bay, south of the Annex, and occupies roughly 12 acres and 650 feet of shoreline. Both sites are in the Town of Harrietstown, Franklin County, on lands classified as Hamlet on the Adirondack Park Land Use and Development Plan Map.
The marina's boathouses and docks were originally constructed in 1924 and had fallen into disrepair by the time LS Marina acquired the marina in March 2014. Additionally, the boathouses did not conform with shoreline building setback restrictions that had been enacted after they were built. Although LS Marina could have chosen to rebuild the nonconforming boathouses in their original footprints (see 9 NYCRR 575.5 [a]), it instead embarked upon a plan to redevelop both sites by replacing the boathouses with new floating dock structures and increasing the overall number of boat slips from 219 to 300. In furtherance of this plan, in April 2014, LS Marina applied to respondent Adirondack Park Agency (hereinafter APA) for a shoreline setback variance for both the Annex and the Main Marina locations, and in February 2016, it applied to APA for a wetlands permit in connection with the Annex location. Over the next several years, APA made a number of requests for more information concerning LS Marina's intentions. Specifically, APA sought additional information regarding, among other things, the economic justification for the increased boat slips; visual impacts and mitigation measures; wetlands impacts; potential alternatives; impacts from increased boat traffic; and stormwater control and wastewater treatment plans. LS Marina responded to these requests and also modified its plans, reducing the number of proposed boat slips from 300 to 292 and making changes to the designs of the floating docks. In May 2020, following an adverse possession action (see LS Mar., LLC v Acme of Saranac, LLC, 174 AD3d 1104, 1108 [3d Dept 2019]),LS Marina acquired an eight-acre [*2]parcel consisting of lakebed beneath the proposed location for the floating dock structures at the Main Marina.
In August 2020, APA determined that the applications were complete and solicited public comment. APA staff then submitted to its board a draft permit/order conditionally granting the permit and variance, along with their supporting findings and recommendations. The board voted to grant the permit and variance as conditioned in the draft permit/order.
Petitioner thereafter challenged APA's determination by commencing the instant combined proceeding pursuant to CPLR article 78 and action for declaratory judgment.[FN1] APA and respondent Department of Environmental Conservation (hereinafter DEC) (hereinafter collectively referred to as the state respondents) jointly filed an answer, and LS Marina separately answered. Supreme Court dismissed the petition/complaint, and petitioner appeals.
As an initial matter, three related motions currently pending before this Court must be addressed. The state respondents and LS Marina each moved to strike an addendum to petitioner's reply brief, and petitioner cross-moved to strike an addendum to the state respondents' brief. The submissions in question consist of internal APA staff memoranda that are not part of the administrative record. "It is well settled that this Court is limited to reviewing facts contained in the record and any arguments based thereon and we will therefore not consider arguments founded upon information outside the record" (Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1209 [3d Dept 2020] [internal quotation marks and citations omitted]; see Federal Natl. Mtge. Assn. v Banks, 198 AD3d 1222, 1225 [3d Dept 2021]). Accordingly, the motions and cross-motion are granted (see Matter of New York State Correctional Officers & Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 309 AD2d 1118, 1119 [3d Dept 2003]). To the extent that the state respondents request that we take judicial notice of the memorandum attached to their brief, we decline that invitation, inasmuch as it is not necessary for a determination of the issues before us.
Turning next to the issue of standing, we have no quarrel with Supreme Court's conclusion that petitioner adequately demonstrated standing to bring this proceeding.[FN2] In order to establish standing to challenge the permit/order, petitioner was "obliged to show an actual stake in the controversy by establishing both an injury-in-fact and that the asserted injury is within the zone of interests sought to be protected by the statute alleged to have been violated" (Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1439 [3d Dept 2020] [internal quotation marks and citation omitted]). As Supreme Court noted, with regard to the Annex portion of the proposed project, petitioner "sufficiently alleged direct harm to [his] aesthetic and environmental well-being" (Matter of Protect the Adirondacks! Inc. [*3]v Adirondack Park Agency, 121 AD3d 63, 69 n 3 [3d Dept 2014] [internal quotation marks, brackets and citation omitted], lv dismissed & denied 24 NY3d 1065 [2014]; see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 305 [2009]), and these allegations fall within the zone of interests sought to be protected by the Adirondack Park Agency Act (see Executive Law § 801; compare Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs, 46 AD3d 979, 982 [3d Dept 2007], lv denied 10 NY3d 706 [2008]; Matter of Barrett v Dutchess County Legislature, 38 AD3d 651, 654 [2d Dept 2007]).[FN3]

As for the merits, petitioner first contends that APA incorrectly interpreted its wetlands regulations. An agency's interpretation of its own regulations is ordinarily entitled to deference, but this rule does not apply when the agency's interpretation contradicts the plain language of the regulations or is irrational or unreasonable (see Matter of Entergy Nuclear Indian Point 2, LLC v New York State Dept. of State, 130 AD3d 1190, 1192 [3d Dept 2015]; Matter of Town of Camillus v Commissioner of Dept. of Envtl. Conservation, 256 AD2d 967, 968 [3d Dept 1998]). LS Marina's wetlands permit application required APA to evaluate the freshwater wetland at the Annex location and assign it a value rating between one and four, with one representing the highest value (see 9 NYCRR 578.5). The value rating is arrived at by first determining whether the wetland possesses any one or more of 24 different characteristics, each of which, in turn, has an assigned value of one through four (see 9 NYCRR 578.5 [a]-[x]). These 24 characteristics are grouped under six headings or categories, which APA refers to as "factors." The wetland's overall value is to be no lower than the highest value of any of its characteristics (see 9 NYCRR 578.6 [a]). Furthermore, as is relevant here, if the wetland has three or more characteristics with a value of two, which fall under "more than one factor," this will raise the wetland's value to one (9 NYCRR 578.6 [c]).
There is no dispute that the wetland at the Annex has three value-two characteristics, and that these three characteristics fall under two separate factors (see 9 NYCRR 578.5 [c], [g], [k]). Nevertheless, APA assigned the wetland an overall value of two rather than one, reasoning that, under these circumstances, the regulations do not allow for elevation to a value of one. In so doing, APA maintains that it relied upon its longstanding regulatory interpretation of the phrase "more than one factor" to require elevation of a wetland to a value-one rating only where there are at least three separate factors involved. Pursuant to such an analysis, however, two factors would not qualify as "more than one" and, as such, this interpretation conflicts with a plain reading of the regulations. The phrase "more than one," in our view, means precisely what it says, and does not[*4], as APA contends, mean "a minimum of three." Indeed, APA acknowledged as much when it conducted an evaluation of the Annex wetland in 2015, issuing a declaratory ruling that the wetland had an overall value rating of one based upon the existence of three value-two characteristics falling under two separate factors.[FN4] Therefore, APA should have assigned an overall value of one to the Annex wetland and should have analyzed the wetlands permit application accordingly (see 9 NYCRR 578.10 [a] [1]). Its assignment of an overall value of two, based upon a reading of the regulations that is contrary to their plain meaning, lacked a rational basis (see Matter of Mount Loretto Nursing Home v Chassin, 235 AD2d 663, 665 [3d Dept 1997]).
Petitioner also takes issue with the state respondents' failure to conduct a carrying capacity study, as directed by the Adirondack Park State Land Master Plan (Adirondack Park Agency, Adirondack Park State Land Master Plan [Aug. 2019], available at https://apa.ny.gov/Documents/Laws_Regs/APSLMP.pdf [last accessed Feb. 20, 2023] [hereinafter SLMP]), prior to approving the project. As petitioner asserts, the SLMP clearly directs that "[a] comprehensive study of Adirondack lakes and ponds should be conducted . . . to determine each water body's capacity to withstand various uses, particularly motorized uses" (SLMP at 4). Further, APA itself has acknowledged the importance of such an assessment,[FN5] including in the Saranac Lakes Wild Forest Unit Management Plan (Department of Environmental Conservation, Saranac Lakes Wild Forest Unit Management Plan [Apr. 2017], available at https://www.dec.ny.gov/docs/
lands_forests_pdf/saranaclakesump.pdf [last accessed Feb. 20, 2023] [hereinafter SLWF UMP]), which governs the Saranac Lakes Wild Forest planning area, of which Lower Saranac Lake is a part. In keeping with the principles stated in that document — i.e., that the Saranac Lakes Wild Forest "cannot withstand ever-increasing and unlimited visitor use without suffering the eventual loss of its essential natural and wild character" (SLWF UMP at 67) — the SLWF UMP sets forth an objective of conducting a comprehensive study of lakes and ponds to determine their carrying capacity (see SLWF UMP at 112-113).
The state respondents' failure to comply with these principles, and specifically with the stated objective contained in the SLWF UMP, is wholly unexplained and, indeed, inexplicable. At the same time, we are mindful that the SLMP and the SLWF UMP govern state lands, while the marina is proposed to be built on privately-owned shoreline and lakebed. Although it is true that "[t]he Adirondack Park is unique in its intricate mixture of public and private lands" (Adirondack Park Agency, More About the Adirondack Park . . ., available at https://apa.ny.gov/about_park/more_park.html [last accessed Feb. 22, 2023]), and that many decisions regarding private land use are appropriately informed by impacts on public lands, when it comes particularly [*5]to lakes and ponds within the Adirondack Park, it has long been recognized that there is a "legislative need[ ] to more accurately define authority over these waters" (SLMP, at 4).[FN6]
Nonetheless, we need not rule upon petitioner's collateral attack on the state respondents' implementation of the SLMP within the context of this proceeding. In analyzing this project, APA was required to consider, among other factors, "whether granting the variance will adversely affect the natural, scenic, and open space resources of the Park and any adjoining water body due to erosion, surface runoff, subsurface sewage effluent, change in aesthetic character, or any other impacts which would not otherwise occur" (9 NYCRR 576.1 [c] [5]) and determine that "[t]he project would not have an undue adverse impact upon the natural, scenic, aesthetic, ecological, wildlife, historic, recreational or open space resources of the park or upon the ability of the public to provide supporting facilities and services made necessary by the project, taking into account the commercial, industrial, residential, recreational or other benefits that might be derived from the project" (Executive Law § 809 [10] [e]).
We find that APA abided by these statutory and regulatory requirements. Notably, APA made its determination in consideration of the alternative, in which LS Marina or a future owner would be entitled to rebuild the preexisting nonconforming marina — rather than engaging in the proposed redevelopment — without APA review. APA determined that, in the event that the variance was denied, LS Marina would have been permitted to reconstruct preexisting nonconforming structures, with more harmful wetlands impacts, and construct more than the 73 additional boat slips proposed in its application. In addition, LS Marina made changes to its original plans at APA's request, prior to permit approval, in order to make the project more environmentally friendly, including adding skylights to the dock structures to benefit underwater species, shortening the structures so they would not be visible from nearby state forest land and incorporating an invasive species control plan and a boat wash station. Further, APA's issuance of the permit was conditioned upon LS Marina taking numerous steps, such as installing wastewater treatment systems and stormwater runoff controls, painting the dock structures green and brown to blend with the surroundings and installing downward-facing lighting so as not to cause light pollution. Accordingly, under these circumstances, APA's determination was not rendered arbitrary and capricious by the absence of the carrying capacity study directed by the SLMP.
Nevertheless, in light of APA's misapplication of its wetlands regulations as outlined above, this Court is constrained to reverse and annul the permit/order. We have considered petitioner's remaining contentions. Having done so, we conclude that they have either been rendered academic in light of our rulings [*6]above or are without merit.
Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the motions and cross-motion to strike are granted, without costs.
ORDERED that the judgment is reversed, on the law, with costs, petition granted, and the permit/order is annulled.

Footnotes

Footnote 1: Certain relief sought by petitioner, including his request for a declaration, was eventually withdrawn. 

Footnote 2: LS Marina is the only party challenging the finding of standing on appeal. Petitioner claims that this issue is not properly before us because it was not raised by LS Marina in a cross-appeal. However, recognizing that LS Marina was not aggrieved by Supreme Court's standing ruling, insofar as the court ultimately dismissed the petition/complaint, a cross-appeal would not have been appropriate (see CPLR 5511; Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn., 203 AD3d 1352, 1354 n [3d Dept 2022]). Rather, LS Marina's argument can be considered as an alternative ground for affirmance (see Matter of Lewis v Dagostino, 199 AD3d 1221, 1221-1222 [3d Dept 2021]; Matter of Village Green Hollow, LLC v Assessor of the Town of Mamakating, 145 AD3d 1134, 1135 n 2 [3d Dept 2016]).

Footnote 3:We are mindful that Supreme Court determined that petitioner lacked standing relative to the Main Marina location of the project. Nevertheless, the challenged permit/order encompasses both the Annex and the Main Marina locations, such that, under these circumstances, the finding of standing relative to the Annex suffices for petitioner to move forward.

Footnote 4: Although APA later issued a second declaratory ruling in which it changed its value rating, it did so on other grounds.

Footnote 5: In considering the expansion of a boat launch on another Adirondack lake, "APA Chairman John Ernst agreed that carrying capacity should be part of the discussion. 'At some point we've got to come to grips with what this means for lakes,' Ernst said" (Gwendolyn Craig, APA Approves RV Campground on Great Sacandaga Lake, Adirondack Explorer, Dec. 16, 2022).

Footnote 6: This statement appeared in the 1972 version of the SLMP and has continued through to the current version.