Matter of Sunsea Energy LLC v New York State Pub. Serv. Commission (2024 NY Slip Op 03914)

Matter of Sunsea Energy LLC v New York State Pub. Serv. Commission

2024 NY Slip Op 03914

Decided on July 25, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 25, 2024

CV-23-1056
[*1]In the Matter of Sunsea Energy LLC, Appellant,
v
New York State Public Service Commission, Respondent.

Calendar Date:May 30, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Powers, JJ.

Phillips Lytle LLP, Buffalo (Craig R. Bucki of counsel), for appellant.
Robert Rosenthal, Public Service Commission, Albany (Daniel Becker of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Richard M. Koweek, J.), entered May 23, 2023 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review, among other things, a determination of respondent revoking petitioner's eligibility to operate as an energy service company in New York.
In October 2017, respondent deemed petitioner eligible to serve New York residential and nonresidential natural gas and electric customers as an energy service company (hereinafter ESCO).[FN1] Petitioner began servicing customers in December 2018, and, shortly thereafter, respondent began receiving consumer complaints concerning petitioner's marketing tactics related to, among other things, soliciting and enrolling new customers. Following an investigation, respondent identified Uniform Business Practices (hereinafter UBP)[FN2] violations related to petitioner's sales script and third-party verification telephone calls. Petitioner crafted a modified sales script, and respondent approved same in May 2019. Thereafter, respondent continued to receive complaints about petitioner's marketing and soliciting efforts, specifically that customers were promised savings, discounts and rebates that did not materialize, customers were led to believe they were speaking to representatives of the traditional utility companies and that customers did not receive refunds after filing complaints. Consequently, respondent issued a notice of apparent failure in September 2020. The notice required petitioner to submit evidence showing what steps it had taken to address the alleged wrongdoing by its sales agents, the measures it had taken to remedy customer complaints and specific actions it had taken to avoid any recurrence.
Dissatisfied with petitioner's response, and in light of receiving additional complaints, respondent directed petitioner in December 2020 to show cause why its eligibility to operate as an ESCO should not be revoked given that its process for soliciting new customers seemed to involve an initial, unrecorded phone call designed to avoid respondent's oversight and that its sales agents continued to use deceptive and misleading practices to persuade customers to accept its services. Respondent further alleged that petitioner enrolled customers without authorization, failed to follow record retention requirements, failed to remove customers from its marketing database upon the customer's request and apparently failed to cease telemarketing during the COVID-19 pandemic state of emergency. Petitioner responded by proffering as justification for its marketing complaints a rogue marketing vendor, tendering a proposed compliance plan consisting of a nine-month moratorium on its telemarketing and door-to-door sales, proposing to provide additional training and testing of its sales representatives, undertaking comprehensive auditing and quality controls, furnishing retraining on record-keeping requirements and issuing refunds to [*2]all customers who filed complaints.
Respondent found petitioner's response to the order to show cause unconvincing. Specifically, respondent found that there was a material pattern of consumer complaints based on 116 complaints within a 16-month period, including unsolicited telemarketing sales calls during the COVID-19 pandemic declared state of emergency. Respondent also determined that petitioner violated the UBP marketing provisions by failing to remove customers from its marketing database after being requested to do so and that it engaged in misleading and deceptive conduct by making false or misleading representations regarding the rates or savings offered by petitioner. As to petitioner's proposal to issue refunds, respondent found that these refunds had been previously promised or had been flatly denied by petitioner and that the new offer was its attempt at self-preservation rather than a gesture of actual good faith. Respondent additionally found that petitioner's lack of adequate responses to customer complaints contradicted its statement that it gave priority to handling all consumer inquiries and complaints, and, thus concluded that petitioner's practices were not indicative of high standards of customer service. Respondent further concluded that petitioner's numerous violations of the UBP, violations of the telemarketing prohibition during the state of emergency, and findings of its violation of similar regulations in the State of Maryland, belied petitioner's contention that it took compliance obligations seriously. Lastly, respondent found that, contrary to petitioner's allegation that it's noncompliance was caused by the rogue actions of a marketing vendor, the vendor that petitioner claimed was the cause (and with whom it had consequently terminated its relationship) was an entirely different vendor than petitioner had listed on its compliance documents. As a result, respondent revoked petitioner's ESCO eligibility in May 2021 and denied petitioner's request for a rehearing.
Petitioner then commenced this CPLR article 78 proceeding seeking to annul the revocation of its eligibility to operate as an ESCO, arguing, as relevant here, that respondent's determination had violated its due process rights, violated several statutes entitling it to a hearing, and was a shockingly unfair abuse of discretion. Supreme Court dismissed the petition, finding that petitioner received adequate process under the law, that no statutory authority entitled petitioner to a hearing and that respondent's determination to revoke petitioner's eligibility to operate as an ESCO was not an excessively harsh abuse of discretion. Petitioner appeals.
Petitioner first contends that respondent's decision to revoke its eligibility was made without affording it adequate procedural due process, thereby violating its liberty interest in its ability to conduct and operate its business. For such a contention to succeed, "petitioner must show, as a threshold matter, [*3]the deprivation of a protected interest by procedures that were insufficient under the circumstances" (Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn., 203 AD3d 1352, 1354 [3d Dept 2022] [internal quotation marks, brackets and citation omitted]). While petitioner initially claimed both a property and liberty interest, on appeal it limits the assertion to a liberty interest. "Although a business may possess a liberty interest, this is limited to instances where a business' ability to conduct its operations suffers from being stigmatized — such as being branded irresponsible or lacking integrity" (id.; see Matter of Schiavone Constr. Co. v Larocca, 117 AD2d 440, 443 [3d Dept 1986], lvs denied 68 NY2d 610 [1986], 68 NY2d 610 [1986]).
A review of the revocation order confirms that the findings include statements that petitioner, "engaged in misleading or deceptive conduct in marketing to New York customers, including making false or misleading representations"(emphasis added)and "[t]hat, combined with the consistent complaints about misleading sales tactics and promises of rebates, rewards, and/or discounts, is not indicative of high standards of customer service." Arguably, these statements brand petitioner as lacking integrity, being irresponsible and may indeed cast aspersions on its reputation and its ability to conduct future business (cf. Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn., 203 AD3d at 1354; see Matter of Schiavone Constr. Co. v Larocca, 117 AD2d at 443).
However, even assuming a liberty interest in this instance, we find that the requirements of due process were satisfied by the procedures afforded to petitioner. "[D]ue process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand" (Matter of Medicon Diagnostic Labs. v Perales, 74 NY2d 539, 546 [1989] [internal quotations marks and citation omitted]; see Matter of Brown v City of Schenectady, 209 AD3d 128,134 [3d Dept 2022]). It "is determined by a weighing of the interests at stake, the risk of erroneous deprivation, the probable value of additional safeguards and the cost of substitute procedures" (Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn., 203 AD3d at 1355 [internal quotation marks and citation omitted]; see Mathews v Eldridge, 424 US 319, 335 [1976]).
Respondent provided notice to petitioner of its numerous problematic business practices and offered it several opportunities to take corrective action, including an initial meeting with respondent's staff to adjust its sales pitch, seeking a response to the notice of apparent failure to address respondent's concerns and receipt of an order to show cause requesting petitioner to set forth reasons why its eligibility should not be revoked. At each stage, petitioner had notice of the claims against it, mechanisms available for challenging respondent's determinations and opportunities to present explanations [*4]and defenses for its actions. Nevertheless, after each stage, the consumer complaints continued. Finally, after respondent revoked petitioner's eligibility to operate as an ESCO, it was able to pursue this CPLR article 78 proceeding to challenge that determination (see Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn., 203 AD3d at 1355). Upon undertaking the balancing test set forth in Mathews v Eldridge (424 US at 335), the safeguards and procedures afforded petitioner were adequate to satisfy due process (see Matter of Keyspan Energy Servs. v Public Serv. Commn. of State of N.Y., 295 AD2d 859, 861-862 [3d Dept 2002]).
Petitioner also contends that respondent's order revoking its ESCO eligibility violated numerous statutory provisions entitling it to a hearing prior to such revocation. We find no merit to any of petitioner's claims pertaining to this argument. Although petitioner points to statutory provisions located in the Public Service Law, including Public Service Law §§ 65 (16) and 66 (5), as authority for its position, "[i]t is undisputed that ESCOs have been operating . . . pursuant to [respondent's] oversight and regulation, as reflected in the UBP's requirements" (Matter of National Energy Marketers Assn. v New York State Pub. Serv. Commn., 33 NY3d 336, 343 [2019]), rather than the statutory provisions relied upon by petitioner. Nor does petitioner succeed by relying on 16 NYCRR part 12, as this set of rules pertain to individual consumer complaints and is, therefore, not applicable. As relevant to State Administrative Procedure Act §§ 301 and 401, also cited by petitioner, ESCOs are not licensed; instead, they are regulated by the set of rules contained in the UBP and these statutes are likewise inapplicable. Lastly, although petitioner questioned respondent's authority to determine that in making telemarketing calls during the COVID-19 pandemic it violated GBL § 399-z, respondent clearly stated that it did not have jurisdiction to decide this question but, rather, it was noting it as a violation under UBP § 2.D.5.m.[FN3] Here, respondent's actions and proceedings were based solely on petitioner's alleged noncompliance with various UBP requirements. As the UBP does not direct that an ESCO be provided a hearing, respondent was within its authority to revoke petitioner's eligibility without providing an administrative hearing (see Matter of National Energy Marketers Assn. v New York State Pub. Serv. Commn., 33 NY3d at 343; Matter of Marathon Power LLC v Public Serv. Commn. of the State of N.Y., 209 AD3d 1245, 1246 [3d Dept 2022], lv denied 39 NY3d 913 [2023]; Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn., 203 AD3dat 1354-1355).
Finally, petitioner contends that revoking its eligibility was not supported by evidence, was an abuse of discretion and vastly disproportionate to the number and nature of complaints it had received from consumers. We disagree. "[A]n administrative penalty must be upheld [*5]unless it is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law" (Matter of Lalima v New York State Dept. of State, 214 AD3d 1051, 1054 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Patel v New York State Educ. Dept., 211 AD3d 1149,1152 [3d Dept 2022]). Further, "it is not the role of this Court to either second-guess the administrative agency or substitute its own judgment for the action taken" (Matter of Castle v Maine-Endwell Cent. Sch. Dist., 111 AD3d 1221, 1222 [3d Dept 2013] [internal quotation marks, brackets and citation omitted], lv denied 22 NY3d 862 [2014]; see Matter of Nappi v Verizon N.Y., 205 AD3d 1181, 1184 [3d Dept 2022]). Respondent noted in its determination revoking petitioner's eligibility that it had fielded nearly 116 complaints against petitioner, that two of its own staff had been the targets of petitioner's deceptive marketing practices and that petitioner had exhibited a pattern of noncompliance. Given that petitioner had been operating as an ESCO within New York for a short period of time and was resistant to changing its business practices to conform to the requirements of the UBP, respondent's revocation of petitioner's eligibility to operate does not seem shockingly unfair. To the extent that we have not addressed any of petitioner's remaining contentions, they have been considered and found to be without merit.
Clark, J.P., Aarons, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: An ESCO is an entity eligible to sell electricity and/or natural gas to customers using the transmission or distribution system of a traditional utility company.

Footnote 2: The UBP is a set of rules regulating ESCOs' business and marketing practices and sets forth requirements for an ESCO to follow in order to maintain eligibility. Additionally, the UBP authorizes respondent to determine and impose appropriate consequences for an ESCO's noncompliance with UBP terms and conditions (see Matter of Marathon Power LLC v Public Serv. Commn. of the State of N.Y., 209 AD3d 1245, 1246 [3d Dept 2022], lv denied 39 NY3d 913 [2023]).

Footnote 3: Moreover, it was undisputed that petitioner violated the statute.